## Grigsby, et al. v. Smith, et al.

(Decided March 23, 1917.)

### Appeal from Perry Circuit Court.

1. Appeal and Error—Record—Copying Rejected Pleading.—An order merely rejecting an amending pleading does not, either at law or in equity, make it part of the record; and, although the clerk copies the rejected pleading into the transcript, but without any order identifying it as the paper offered, it cannot be considered on appeal.

2. Appeal and Error—Exceptions to Deposition.—Where exceptions are taken to a deposition as a whole, and also goes further and specifies the reason for the exception, it is sufficient to raise the question of the competency of the testimony specifically objected to.

·3. Witnesses—Statement of Deceased Person.—A party to an action cannot testify for himself concerning any verbal statements of or transactions with one who is dead, or is insane at the time the testimony is offered, except in the instances mentioned in subsection 2 of section 606 of the Civil Code of Practice.

4. Adverse Possession—Pleadings.—Where the plaintiffs alleged that they had held the land in controversy adversely for more than

fifteen years, and the defendant traversed that allegation, and alleged that he had held the same land adversely for more than fifteen years, the issue was made between them as to who had the possession, and no further pleading upon that question was necessary.

5. Appeal and Error—Finding of Chancellor.—Where the proof showed that the grantor in a deed was "flighty" and had spells of aberration, but that he always attended to his own affairs and made his own trades, and that his flighty spells were less frequent than his lucid periods, the finding of the chancellor that he had mental capacity to make the deed in question will not be disturbed.

6. Adverse Possession—Executory Contract of Purchaser—Possession.—It is a general rule that when one enters upon and holds possession of land under an executory contract of purchase, or bond for title, the entry and possession are in subordination to the title of the vendor until payment or performance of all the conditions by the vendee, or until the vendee has distinctly and unequivocally repudiated the title of his vendor, which repudiation is brought expressly or by legal implication to the vendor's knowledge.

7. Adverse Possession—Extent of Possession.—Where the vendee has paid for the land, and owes nothing to his vendor, his possession is hostile to any claim of superior title or right by the latter; and, although a deed is not executed, the vendee can use his possession, after the statutory period, to defeat the claim of his vendor or anyone else to right of possession upon the ground that the paper title was vested in them.

8. Appeal and Error—Finding of Chancellor.—Where the testimony as to the character of the possession of the respective parties to an action is conflicting and the mind is left in doubt, the finding of the chancellor will not be disturbed.

MILLER, WHEELER & CRAFT for appellants.

MORGAN & NUCKOLS for appellees.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

This is a contest over ninety acres of land on Sook's branch, in Perry county.

John Grigsby, the father of the appellants, Jackson ("Jack") Grigsby and Sallie Grigsby, bought the land in dispute in 1882, and moved upon it. He owned other lands in the neighborhood; and, although he sold portions of his tracts, he continued to live upon the land in question until his death in 1904. The character of his tenancy, after 1894, is, however, in dispute.

In 1894, John Grigsby sold the ninety acres in controversy to the appellee, Manford Smith, for $200.00.

He gave Smith a title bond, reciting a consideration of $400.00; but, the proof is clear that the consideration was only $200.00, and that it was the custom in that neighborhood to double the real consideration, in all deeds and title bonds.

After John Grigsby's death in 1904, his son "Jack" Grigsby, and his daughter, Sallie Grigsby, continued to live upon the ninety-acre tract; and, the character of this tenancy is likewise questioned.

In April, 1913, the appellee, Smith, and McKee, his son-in-law, entered upon the land in controversy, cut timber, erected a small house thereon, and cleared about eight acres of land on which McKee raised a crop of corn. McKee testified that when he went upon the land in 1913, he found "Jack" and Sallie Grigsby living there.

In 1914, "Jack" Grigsby and Sallie Grigsby were judicially declared to be persons of unsound mind, and Peyton Hurt was appointed and qualified as committee for each of them.

On December 23, 1914, "Jack" and Sallie Grigsby by Hurt, their committee, filed this action, in equity, against Manford Smith and John McKee, alleging that "Jack" and Sallie Grigsby were owners and legal title-holders of, and in the actual possession of the ninety acres in controversy; that Smith and McKee had unlawfully and without right, entered upon a portion of said tract, as above narrated, under some kind of a pretended claim or title to said land; that Smith and Mc-Kee were, in that way, trying to reduce to their own use and benefit the possession of the plaintiffs, and their title; that plaintiffs and those under whom they claimed had been in the quiet, peaceable and adverse possession of the ninety-acre tract to well marked and defined boundary lines for more than thirty years; and, that the defendants were still threatening to cut timber and erect other houses thereon, and would do so unless enjoined from so doing. They prayed that the defendants, Smith and McKee, be required to set up their claim, whatever it was, and that their pretended claim and title papers, of whatever nature, be canceled; that the plaintiffs' title be quieted; that Smith and McKee be enjoined from trespassing upon said tract of land, or from interfering in any way with the plaintiffs' possession thereof, or from trying to convert the title and possession of the

plaintiffs therein; and, that it be adjudged that the plaintiffs, Jackson Grigsby and Sallie Grigsby, were the owners of the land.

· The first paragraph of Manford Smith's answer is a traverse of the allegations of the petition. In a second paragraph Smith alleged he was the owner of, and in the actual possession of the land in controversy, and had been in the actual, open, continuous, peaceable and adverse possession thereof for a period of more than fifteen years before the institution of this action, claiming the same·adversely and to a well marked and defined boundary throughout all of said period.

By the third paragraph of his answer, Smith further alleged that he had bought the land from John Grigsby in 1882, and had paid him in full therefor; that John Grigsby executed and delivered to him a title bond as evidence of the trade; and, that he kept the title bond until about 1903 or 1904, when he delivered it to a man to whom he had sold the mineral rights in the ninety-acre tract, who had lost or misplaced the title bond beyond recovery, and it was not filed, for that reason. The third paragraph of the answer further stated that these facts were well known to the plaintiffs, "Jack" and Sallie Grigsby, who, in 1908, executed and delivered to.the defendant a deed for the ninety-acre tract; that soon thereafter, Samuel and Sylvester Grigsby, the other two children of John Grigsby, executed a similar deed to defendant for the same tract of land; that these deeds were made for the purpose of perfecting defendant's title in and to said tract of land; that Samuel and Sylvester Grigsby had recognized Smith's claim and ownership therein ever since he bought it from John Grigsby in 1894; that the defendant sold and conveyed the mineral rights therein, in about 1903;·and, that the plaintiffs had, during all of said time, recognized Smith's title to the land, and were now estopped from asserting any claim thereto.

The first and second paragraphs of the reply traversed the second and third paragraphs of the answer, respectively. But, by the third paragraph of their reply, the plaintiffs alleged that if Manford Smith had a deed purporting to have been made by the plaintiffs, Jackson and Sallie Grigsby, as alleged in the answer, it was a forgery; that they did not then have, and had never had, sufficient mind or understanding to make or

execute a deed or other conveyance, or to know the nature of such an instrument; that neither of them could read or write, and both had been *non compos mentis* from birth, all of which was well known to Smith; and, that if Smith had a deed from the plaintiffs, it was procured from them through the fraud of Smith.

By his rejoinder Smith completed the issues by traversing the third paragraph of the reply, last above referred to. At the same time, however, Smith filed an amended answer and counter-claim, stating that more than fifteen years before the institution of this action, John Grigsby had executed and delivered to him a title bond for the ninety-acre tract of land in question; that he paid Grigsby in full therefor, and took possession of the land and had held continuous and adverse possession of same under said title bond, ever since; that in 1903 or 1904 he delivered his title bond to the purchasers to whom he had sold the mineral rights in the land, and that he could not now produce the title bond, for that reason; that some years after the execution of the title bond, John Grigsby had died intestate, and left surviving him as his only children and heirs-at-law, the plaintiffs, Jackson and Sallie Grigsby, and Samuel Grigsby and Sylvester Grigsby; that by the terms of the title bond it was expressly agreed that John Grigsby should execute and deliver to him, in conformity therewith, a general warranty deed for the ninety-acre tract of land, but that John Grigsby had died before making this conveyance and perfecting defendant's title; and, that Samuel and Sylvester Grigsby had conveyed their interest in said land to the defendant. Smith made his answer a counter-claim against Jackson and Sallie Grigsby, and prayed that the court would adjudge to him the tract of land in controversy, and direct its master commissioner to execute to him a deed, conveying the land to him for and on behalf of the plaintiffs, Jackson and Sallie Grigsby.

It will be noticed that this pleading is, at most, only an enlargement of Smith's original answer, with a somewhat enlarged prayer for relief.

About one month later plaintiffs filed a reply to Smith's amended answer and counter-claim; and, they also tendered and offered to file an amended petition. The first paragraph of the reply traversed the affirmative allegations of Smith's amended answer and coun-

ter-claim, and by the second paragraph of their reply Jackson and Sallie Grigsby averred that it had been alleged in the answer and counter-claim that the title bond had been executed by John Grigsby to Smith more than fifteen years next before the institution of the action; and they further averred that if it should turn out otherwise, then the defendant was barred by the fifteen years' statute of limitations, he not having instituted any action to recover the land in controversy within that period of time, or at all; and, the plaintiffs relied upon the fifteen years' statute of limitations as a bar to any recovery by Smith. This pleading further alleged that if the title bond had been executed by John Grigsby as alleged, it was done at a time when he was of unsound mind, a fact which was well known to Smith at the time. No rejoinder was filed to this reply.

The amended petition tendered at the same time, alleged that if John Grigsby had executed the title bond to Manford Smith as had been alleged, it had been done at a time when John Grigsby was of unsound mind, and was procured by Manford Smith by fraud, coercion and overreaching of John Grigsby while *non compos mentis.*

The court overruled the motion to file the amended petition setting up the disability of John Grigsby, and the plaintiffs excepted to the ruling. However, as above stated, the allegation of the rejected amended petition which set up the incapacity of John Grigsby at the time he executed the title bond, was contained in the reply to the amended answer and counter-claim, to which reply no rejoinder was ever filed.

Proof was taken, and upon the trial the chancellor dismissed the petition; and, although the judgment further declared that Manford Smith was the owner of the ninety-acre tract of land in dispute, it did not direct a deed to be made to him. From that judgment the plaintiffs, Jackson and Sallie Grigsby, by their committee, prosecute this appeal.

For a reversal, the plaintiffs insist that the circuit court erred: (1) In rejecting their amended petition, pleading the unsoundness of mind of John Grigsby, their father, at the time he executed the title bond in 1894; (2) in overruling their exceptions to the depositions of Manford Smith and John McKee; (3) in not awarding judgment for the plaintiffs upon the pleadings, since there was no rejoinder to their reply, which

interposed the fifteen years' statute of limitations against Manford Smith's claim; (4) in not holding that Jackson and Sallie Grigsby were *non compos mentis* in 1908, when they executed the deed to Smith for the land in controversy; (5) in holding that John Grigsby, father of appellants, executed a title bond to the land in controversy to the appellee, Smith, and that he was then competent to do so; (6) in holding that Manford Smith ever acquired a title to the land in controversy, either by open or adverse possession, or otherwise; and, (7) that the judgment is not supported by the evidence.

1.   If the circuit court erred in rejecting the amended petition, that ruling cannot be reviewed, for the reason that the amended petition was not made a part of the record.   It was not identified by an order of the court, or otherwise, or brought into the case by a bill of exceptions.

The rule is well stated in Newman's Pleading and Practice (Rev. ed. of 1907), section 675, as follows:

"An order merely rejecting an amended pleading does not, either at law or in equity, make it a part of the record, and though the clerk copy such a pleading in the transcript, but without any order recognizing it as the paper offered, it can not be considered on appeal. Nor can it be considered if the order make it a part of the record, unless it be identified by the order or by the certificate of the clerk as the paper tendered and rejected.   Unless, therefore, a rejected pleading be made part of the record by order, and identified, it should be embodied in a bill of exceptions."

The text is supported by Hortsman v. L. & C. R. R. Co., 18 B. M. 223; Young v. Bennett, 7 Bush 476; Bramel v. Bramel, 23 Ky. L. R. 11, 62 S. W. 529; Lewis' Admr. v. Bowling Green Ry. Co., 147 Ky. 461; Commonwealth v. P. C. C. & St. L. R. Co., 163 Ky. 646, and many similar cases.

The fact that the clerk took it upon himself to copy it into the record did not make it a part of the record, and the appellee's motion, made in this court, to strike it from the record, will have to be sustained.

2.   The appellants excepted to the deposition of Manford Smith as a whole, because he testified for himself concerning certain alleged verbal statements of and transactions with John Grigsby, who was dead at the time Smith testified, and when no representative of, and

no one interested in, John Grigsby's estate, had testified against Smith.

They also excepted to the depositions of Smith and McKee in their entirety, because they testified for themselves concerning verbal statements of, and alleged transactions with, the plaintiffs, Jackson Grigsby and Sallie Grigsby who, at the time of said alleged statements and transactions, were of unsound mind, and had been so adjudged by the Perry county court, and neither of them had, at any time, testified against Smith or McKee with reference thereto, nor had any agent of Jackson and Sallie Grigsby testified against Smith and McKee with reference thereto, nor was any agent of the plaintiffs who had had any conversation or transaction with Smith or McKee, living at the time Smith and McKee testified with reference thereto. Civil Code, section 606, subsection 2.

Appellee makes the point that the exceptions are insufficient because they go to the depositions as a whole; and, as part of the depositions are competent, the exceptions should be overruled for that reason, upon the authority of L. & N. R. R. Co. v. Graves, 78 Ky. 74, and Bronston v. Bronston, 141 Ky. 693.

It will be noticed, however, that while the exceptions do, in terms, go to each and every answer of the witnesses therein referred to, they further declare the reason for the first exception to be that Smith had testified for himself concerning alleged verbal statements and transactions with John Grigsby, who was dead at the time Smith testified, and that the exception to the testimony of Smith and McKee related to their testimony concerning transactions with Jackson Grigsby and Sallie Grigsby while they were of unsound mind. In our opinion these exceptions are sufficiently specific to raise the question of the competency of this testimony by Smith and McKee, under subsection 2 of section 606 of the Civil Code of Practice, although they point out no particular question or answer.

Subsection 2 of section 606 of the Civil Code provides that "No person shall testify for himself concerning any verbal statement of, or transaction with, or any act done or omitted to be done by, an infant under fourteen years of age, or by one who is of unsound mind or dead when the testimony is offered to be given except for the purpose, and to the extent, of affecting one who

is living, and who, when over fourteen years of age and of sound mind, heard such statement, or was present when such transaction took place, or when such act was done or omitted, unless: (b) The person of unsound mind shall, when of sound mind, have testified against such person, with reference thereto; or, (c) the decedent, or a representative of, or some one interested in, his estate, shall have testified against such person, with reference thereto; or, (d) an agent of the decedent or person of unsound mind, with reference to such act or transaction, shall have testified against such person, with reference thereto, or be living when such person offers to testify, with reference thereto.''

Under this provision of the code, we think it clear that the testimony of Manford Smith, wherein he told of his purchase of the land from John Grigsby in 1894, and subsequent conversations with him, was incompetent. It was not, however, prejudicial in this case, since the facts to which Smith testified were fully and thoroughly established by other witnesses who were competent to testify upon that subject. Ben Gayheart testified that he wrote the title bond; that the consideration was $200.00; and, that John Grigsby and his wife signed it. William Smith testified that he was present when the bond was written and executed; that Ben Gayheart wrote it, and that the witness was present at the final settlement when Manford Smith paid John Grigsby the balance of the purchase money. And, R. S. Smith testified that John Grigsby told him he had let Manford Smith have the land, and was living upon it at Manford's ''say so.''

Furthermore, Peyton Hurt, appellants' committee, testified that John Grigsby sold the ninety-acre tract to Smith for $200.00; that John Grigsby had received at least a part of the purchase money by accepting a horse from Smith; that John Grigsby did not claim the mineral rights which Smith had sold; that he had agreed to join in a deed with Smith to the minerals in order that Smith might get back his purchase money; and that Grigsby said he would not give Smith a deed for the land, because he thought he would get as much for the sale of the mineral rights as he ought to have.

There is also considerable evidence to the effect that while John Grigsby repeatedly recognized his sale to Smith, he had concluded not to carry it out except in

part, because he felt that Smith had not paid him a sufficient consideration therefor. That action can, however, in no way invalidate his contract. Furthermore, Sylvester Grigsby testified that his father joined in the deed for the mineral rights; that Smith had paid for the land by giving his father a horse and other property; while Bayless Grigsby testified that he had heard John say he had sold the land to Smith, but that he did not think Smith had paid what he should have paid for it.

So, if we exclude the testimony of Manford Smith, there is yet abundant proof of the sale, the execution of the title bond, and the payment of the purchase price.

Likewise, the exception to Smith's testimony as to transactions with the appellants, who were of unsound mind, should have been sustained; but, it was not of sufficient importance to prejudice appellants, and was covered by other witnesses.

Insofar as the second exception goes to the testimony of John McKee as to transactions with appellants, it is not well taken since McKee was not testifying for himself. Furthermore, McKee's testimony was of little consequence. In one respect it was favorable to the appellants, since McKee testified that when he moved on the land in 1913 he found Jackson and Sallie Grigsby living there.

3. We find little merit in the contention that the court erred in failing to give judgment for the appellants upon the ground that no rejoinder was filed to the paragraph of the reply in which the plaintiffs relied upon the fifteen years' statute of limitations, as a bar to Smith's right of recovery. It will be remembered that in their petition the plaintiffs asserted and relied upon their adverse possession of the land for more than thirty years in support of their claim of ownership, and that in the second paragraph of his original answer, and again in his amended answer, Smith had alleged that he had been in the adverse possession of the land for more than fifteen years before the suit was filed, and relied upon that possession, as well as his title bond from John Grigsby, and deed of confirmation from the appellants, in support of his ownership.

So, when the appellants alleged that they had held the land adversely for more than thirty years, and Smith traversed that allegation and alleged that he had held the same land adversely for more than fifteen years, the

issue was made between them as to who had the possession, and no further pleading upon that question was necessary. Grigsby v. Hart, 13 Ky. L. R. 920, 18 S. W. 537; Ermert v. Dietz, 19 Ky. L. R. 1639, 44 S. W. 138; Scaggs v. Poteet, 22 Ky. L. R. 775, 58 S. W. 822; Ellis v. Blackerby, 25 Ky. L. R. 1557; Wheeler v. Davis, 29 Ky. L. R. 730, 96 S. W. 730; Higdon v. Wayne County Security Co., 154 Ky. 338.

4. The proof shows that Jackson and Sallie Grigsby were of unsound mind at the time they executed the deed to Smith in 1908, and he cannot claim any title by reason of that conveyance. But, if John Grigsby, their father, sold the land to Smith and he perfected his title in any way, no deed from appellants was necessary, and their failure to make a deed to Smith will avail them nothing.

5. Upon the issue as to John Grigsby's sanity at the time he executed the title bond in 1894, it is clear from the proof that he had sufficient capacity to attend to his own affairs. While there is considerable proof to the effect that he was "flighty" and had spells of abberation, there is abundant proof to the effect that he always attended to his own affairs, and made his own trades. He had "wild spells," but they were certainly much less frequent than his lucid periods.

We conclude, therefore, from this proof, that the charge of John Grigsby's incapacity at the time he made the deed in 1894, is not sustained. The court, therefore, did not err in finding that John Grigsby executed the title bond for the land in controversy, and that he was of sound mind at the time.

6. One question remains: Did Manford Smith ever obtain the legal title to the land in dispute, by adverse possession or otherwise?

In Rice v. Blair, 161 Ky. 286, the court said:

"It is a general rule that when one enters into and holds possession of land under an executory contract of purchase, or bond for title, the entry and possession are in subordination to the title of the vendor until payment or performance of all the conditions by the vendee, or until the vendee has distinctly and unequivocally repudiated the title of his vendor, which repudiation is brought expressly or by legal implication to the vendor's knowledge. Chiles v. Jones, 4 Dana 479; Kirk v. Taylor,

8 B. M. 262; Fowke v. Darnall, 5 Litt. 316; Henderson v. Dupree, 82 Ky. 674; 1 Cyc. 1044.

"The reason for the rule forbidding a person who has gone into possession under a contract to purchase, to dispute the title of his vendor, is believed to be the same as in cases of landlord and tenant; namely, the injustice of allowing a person who has obtained possession by admitting the title of another, to enjoy that title, and, in case of failure of proof of it, hold the premises himself."

And, in New Dominion Oil Gas Co. v. Gaffney, 134 Ky. 800, it was further said:

"Where a grantee under an executory contract for the sale of land looks to his grantor for title, it is generally held that he cannot at the same time claim that his possession was so adverse to his grantor as to defeat the latter's lien for unpaid purchase money. But where the vendee has paid for the land, and owes nothing to his vendor, his possession is hostile to any claim of superior title or right by the latter, and although a deed is not executed, the vendee could use his possession, after the statutory period, to defeat the claim of his vendor or any one else to right of possession because the paper title was vested in them. If the possession is hostile to any claim of right by the former owner, it is adverse to it, and sets the statute running, although the person in possession may be looking to the former owner for conveyance. Commonwealth v. Gibson, 85 Ky. 666, 4 S. W. 453, 9 Ky. L. R. 205; Thompson v. Thompson, 93 Ky. 435, 20 S. W. 373, 14 Ky. L. R. 513; Owsley v. Owsley, 117 Ky. 47, 77 S. W. 397, 25 Ky. L. R. 1186; Spradlin v. Spradlin, 18 S. W. 14, 13 Ky. L. R. 723."

Applying this rule to the facts before us, it appears that Manford Smith claimed to have been in possession of the land in dispute ever since he bought it from John Grigsby in 1894; and that, although John Grigsby during his lifetime and up until his death in 1904, occupied a portion of the land which was, after his death, occupied by these appellants, Smith insists that they were his tenants during all of that time.

William Smith testified that Manford Smith rented this land one year to Long Ben Grigsby; another year to John Grigsby; and for still another term to Jack Combs. If these facts are true, Manford Smith was in possession of the land in question through his tenants.

Furthermore, the proof clearly shows that Manford Smith performed his contract by paying the purchase

price more than fifteen years before this action was brought, and was claiming the land as owner, and John Grigsby recognized his ownership by signing the deed to the mineral rights.

On the other hand, the appellants' witnesses say that John Grigsby lived upon the land as his own until his death, and that the appellants thereafter held possession of it. But these statements are not altogether inconsistent with what the witnesses for Smith have to say about it, since the question is not whether John Grigsby and appellants had possession of the land, but under what right or in whose behalf did they hold possession? Sylvester Grigsby and Bayless Grigsby testified that when John Grigsby sold the tract in question to Manford Smith he moved to another tract which he owned on Sook's branch; while R. S. Smith testified that John Grigsby told him he had let Manford Smith have this land and was living there with Manford's "say so." That would give Manford a possession of about nineteen years before the suit was filed.

Furthermore, Manford Smith has not only paid taxes upon the land since 1897, but he redeemed it from a tax sale made in that year.

Under this conflicting testimony as to the character of the possession of the respective parties, we are not inclined to interfere with the finding of the chancellor that Manford Smith's contention was sustained by the proof.

Judgment affirmed.