# Booth v. Board of Education of City of Owensboro, et al.

(Decided March 25, 1921.)

## Appeal from Daviess Circuit Court.

1.  Statutes—Legislative Intent.—To arrive at the meaning of a statute it is necessary to ascertain the intention of the legislature in enacting it, which is to be gathered from the language of the act as a whole.  But where the legislative intent is so apparent on the face of the statute as that there can be no question of its meaning, there is no room for construction.

2.  Schools and School Districts—Elections—Bonds.—By the act of March 22nd, 1920 (Acts General Assembly, 1920, chap. 53, p. 224) a board of education of a city of the third class has authority to call and cause to be held an election therein for obtaining the sense of its voters as to whether bonds shall be issued, payable by the city, in aid of its common schools, whether for repairing or improving existing buildings, acquiring sites and erecting new ones or otherwise supplying the needs of such schools; and also authority to call and cause to be held a special registration of the qualified voters of such city, preliminary to the holding of such election.

3.  Schools and School Districts—Elections—Bonds.—If at such election the bond issue is approved by the requisite majority of the voters, the act, supra, makes it the duty of the general council or board of commissioners of the city, upon the demand of the board of education, to levy, in addition to that previously required for school purposes, "annually in its city tax levy a rate that will raise a sum sufficient to pay the interest and create a sinking fund for the payment of the bonds."

4.  Schools and School Districts—Board of Education—Increase of Membership.—Although the act confers additional powers on the board of education; provides for an increase of one in its membership; and that the election of a new board shall take place at the regular election in November, 1921, as it does not abolish the board of education existing at the time the act went into effect, but continues its members in office until the election of their successors in November 1921; and does not confine the exercise of the power conferred on a board of education to call an election regarding the issuing of school bonds to the board of education then to be elected, it necessarily follows that such power is also lodged in and can legally be exercised by the board of education continued in office by its provisions until the election, in November, 1921, of a new board.

5.  Statutes—Time of Taking Effect—Schools and School Districts.— As the act contains an emergency clause, was approved March 22, 1920, and went into immediate effect, the board of education, as then and now constituted, being continued by it in office, must exercise all the powers and discharge the manifold duties required by its provisions of a board of education during the interval of nearly two years between March 22, 1920, the date the act became effective, and the election in November, 1921, and induction into office of a new board of education.

6.  Schools and School Districts—Elections—Issue of Bonds.—As in calling and causing to be held the registration of voters and election for obtaining the approval of the voters of Owensboro, a city of the third class, to the issuance and sale of bonds in aid of the public schools of that city, complained of by appellant, the present board of education of the city acted in pursuance of authority sufficient to that end conferred upon it by the act, supra, the proceedings ending in the election admittedly were regular, and the election resulted in more than the required majority in favor of the bond issue, the refusal of the circuit court to enjoin at the suit of appellant, a taxpayer, the issuance and sale of the bonds was not error.

BIRKHEAD & WILSON for appellant

FLOYD J. LASWELL for appellees.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

This action was instituted in the court below by the appellant, W. B. Booth, a resident taxpayer of the city

of Owensboro, suing in his own behalf and for all other taxpayers of the city similarly situated, against the appellees, Board of Education of the City of Owensboro, its president and clerk, its object being to prevent by injunctive process, prayed of the court, the issuance and sale by the appellees in aid of the common schools of Owensboro of certain bonds serially numbered one to six hundred, inclusive, of the denomination of $500.00 each, amounting in the aggregate to $300,000.00, and styled: "Owensboro City School Improvement Bonds," which if issued by appellees as intended would bear date June 1, 1921, mature thirty years after date, and be payable at the United States National Bank of Owensboro, with interest at 6 per cent. per annum from date, payable semiannually, in such amounts and at such dates, respectively, as may be stated by coupons attached to the bonds; the bonds to contain, however, a stipulation reserving to the board of education the right to pay after the expiration of five years from the date of their issual any number or all of them, with the accrued interest to the date of such payment. It is admitted in the petition that the question whether the bonds should be issued and sold by the board of education was duly passed on and affirmatively determined by the voters of the city of Owensboro January 22, 1921, at an election then held in that city, the proposition as voted on being as follows: "Whether or not the board of education of the city of Owensboro shall issue bonds to the amount of three hundred thousand ($300,000.00) dollars, for the purpose of providing suitable grounds, school buildings and equipment for said city." Of the 4091 votes cast in the election 3630 were given for and 461 against the proposition, making a majority in favor of the issuance and sale of the bonds largely in excess of the two-thirds required by law.

The petition alleges that there was a registration on January 15, 1921, of all voters who participated in the election and were qualified to vote therein; and admits that both the registration and election were held by the officers required by law to conduct them, following such publication of the calls therefor and notices thereof as were required by law; and that both were held in pursuance of certain resolutions, copied in and made a part of the petition, which were duly adopted by the appellee, board of education, at a regular meeting thereof, attended by all of its members, held December 6, 1920; which

resolutions, after declaring the funds annually received by the board from taxation and all other sources for school purposes insufficient to meet the needs of the schools of the city, and the immediate necessity of raising additional funds to the amount of $300,000.00, for repairing and improving the present school buildings, and purchasing new sites for and erecting other necessary school buildings, ordered the holding of the election of January 22, 1921, for the purpose of taking the sense of the voters of the city of Owensboro regarding the issuing and sale of the bonds in question; and as preliminary thereto and to insure a fair election, also ordered the holding of the registration of voters January 15, 1921.

The petition does not allege any defect or irregularity in the proceedings of the board of education looking to the issuance or sale of the bonds, or in the conduct of the election approving same. Nor does it question the need of additional funds for the support of the common schools of all grades in the city of Owensboro, or the necessity of the issuance and sale of the bonds to raise such funds, as declared by the board of education; or claim that the indebtedness that would thereby be incurred by the city of Owensboro, would, with what it already owes, exceed the limit of indebtedness as fixed for a city of its class by the constitution of the state. It is, however, alleged in the petition as a ground for the injunction therein asked, that the resolutions and orders of the appellee, board of education, requiring the special registration of voters and holding of the election for approving the issuance and sale of the bonds; and also the registration and election had and held pursuant thereto, were and are void, because the board was without power to make such orders or to issue or sell the bonds in question; it being further alleged that under the present common school law of the state, Acts General Assembly, 1920, chap. 53, page 224, applicable to Owensboro, which is a city of the third class with a population of more than 15,000, the powers that were exercised by the appellee, board of education, in the particulars referred to were and are confided by the statute, *supra*, to and can only be exercised by the successors in office of the present members of the board, who will be elected by the voters of the city of Owensboro as members thereof at the regular election to be held in November, 1921. The prayer of the petition asks, not

only that the court enjoin the board of education from issuing and offering for sale the bonds, but also that the president and clerk of the board be enjoined from signing them as directed by its order to that effect.

Appellees filed a general demurrer to the petition and without waiving their right to insist upon same, also filed an answer which specifically denied all affirmative allegations of the petition attacking the authority of the board of education to issue and sell the bonds, or the validity of the proceedings resulting in its claim of right to do so; and alleged the necessity for the issuance and sale of the bonds, and the facts relied on to show the legality of the election by which their issuance and sale are claimed to have been authorized; also the legality of the special registration previously had in order to insure the fairness of the election; and finally that the bonded and other indebtedness of the city of Owensboro, including the $300,000.00 of school bonds in question, is, and would be, less than the total indebtedness it is permitted by the constitution to incur.

After the filing by appellant of a general demurrer to the answer, the case was submitted upon the demurrer to the petition and answer and upon the merits as presented by all the pleadings referred to. The submission resulted in a judgment overruling the appellant's demurrer to the answer, sustaining that of appellees to the petition and dismissing the action; from which judgment the former has appealed.

It is apparent that the pleadings present all questions of law and fact involved in the case, and the only questions to be decided are whether the board of education of the city of Owensboro, as at present constituted, had the legal authority to determine the necessity of incurring for the benefit of the common schools of that city the indebtedness of $300,000.00, complained of in this case, and to order and call, as was done by it, the special registration and election in question.

It is argued in support of appellant's contention that as under the common school law of this state in force prior to and when the act of 1920 was passed (Ky. Stats., sections 3462-3480, inclusive), the board of education of a city of the third class had no authority to call or cause to be held therein an election for the purpose of obtaining the approval of its voters to the incurring by such city of a bonded indebtedness in aid of its common schools,

when such authority was conferred by the act of 1920, *supra,* it was not intended by the legislature that it should be exercised by the board of education, as then and now constituted, although its members were by the act left in office, but by a board of education composed of the members whose election the act requires shall take place at the · regular election in November, 1921. In other words it is the appellant's contention that as the act of 1920 provides for the reorganization, in some measure, of the board of education by an increase of its membership from eight to nine and requiring that the. nine be elected in November, 1921, it is its meaning that the authority it confers for the calling of an election by the board of education upon the question of a bond issue, can not be exercised until after the election in November of another board, and then only by the newly elected board.

Counsel for appellant confess their inability to cite any authority in support of their argument, and we find nothing in the language of the act to sustain it or the contention it seeks to enforce.

In order to arrive at the meaning of a statute it is necessary to ascertain the intention of the legislature in enacting it, which is to be arrived at from the language of the act as a whole; and it is a cardinal rule of construction that phrases and sentences are to be understood as used in their technical meaning, if they have acquired one, and in their popular meaning if they have not. But where the intention of the law making body is so apparent on the face of a statute as that there can be no question of its meaning, there is no room for construction. Commonwealth v. Ward, 136 Ky. 146; Hardy v. Russell, 181 Ky. 287; James, Auditor v. U. F. S. & G. Co., 133 Ky. 229; Gilbert, Supt. v. Greene, Auditor, 185 Ky. 817; State Text Book Com. v. Weathers, 184 Ky. 748.

Testing the statute here involved by the rules of construction referred to, we find nothing in its numerous provisions that sustains appellant's attack upon the power of the present board of education of the city of Owensboro to call or cause to be held the registration and election by which the approval of the voters of the city to the bond issue contemplated by the board was obtained. The act in question gives the boards of education of cities of the third class complete governmental control of the common school systems thereof, including all schools, high

and low, or however graded, that are maintained therein by public taxation. The numerous and far reaching powers conferred on such boards by the act are specifically set forth in the last paragraph of section 1, and in sections 2 to 24, inclusive, examination of which will show that many of the powers and duties thus enumerated are such as were by law vested in and exercised and performed by the boards of education of cities of the third class prior to the passage of the act of 1920.

It is true that prior to the enactment of the present statute the power to call such an election as was held by order of the present board of education was not by law vested in that board, but that power is fully given it by the act, *supra,* but to be exercised as in its discretion deemed proper. The act also makes it the duty of the general council or board of commissioners of the city, if at the election held for that purpose the issuing of bonds is approved by the required majority of the votes cast, in addition to that previously required or ordinarily made for the maintenance of the schools of the city, "to levy annually in its city tax levy a rate that will raise a sum sufficient to pay the interest and create a sinking fund for the payment of the bonds at maturity."

We find nothing in the provisions of the statute under consideration that manifests a legislative intent to deprive the appellee, board of education, of authority to call or cause to be held the special registration and election by which the issuing of the bonds in question was approved by more than the required majority of votes. It certainly does not in terms declare that such a registration of voters or such an election must or should be postponed until after the present board is succeeded by the board whose members are to be elected in November, 1921. Nor does it abolish the present board, declare that, as now constituted, performance of any of its functions shall cease, nor that a vacancy in office as to any of its members exists. While section 24 of the act provides that all laws and parts of laws in conflict therewith are repealed, it also declares that "the general school laws of the state and all laws and parts of laws applicable to the general system of public schools in a city of the third class and not inconsistent herewith shall be in full force and effect in such city. . . . "

At the time of the passage of the act the appellee, board of education, as then and now constituted, had a

corporate entity and was an existing instrumentality of the law appertaining to the government and maintenance of the public schools of the city of Owensboro; and if it had been contemplated by the legislature that it should not continue to function as such an instrumentality until succeeded by the similar board, the members of which are to be elected in November, 1921, the act certainly would have so declared; therefore, the absence of such a declaration, compels the conclusion that it was the intention of the legislature that the present board of education, whose members were elected prior to the passage of the act of 1920, shall until succeeded by a new board following the November election 1921, possess all the powers and perform all the duties that under the provisions of the present law may or are required to be exercised or performed by a board of education. And this would be true, even if the terms of office for which the members of the present board of education were respectively elected, should expire before the election of those who will succeed them as members of the board of education, for they would be legally entitled to continue in office until their successors are elected and shall have qualified.

It is not to be overlooked that the act in question contains an emergency clause which operated to put its provisions into effect upon its approval by the Governor, which was given March 22, 1920. This fact naturally suggests the inquiry, if not through the board of education, as now and on March 22, 1920, constituted, by what instrumentality did the legislature intend that the acts and duties allowed and required of a board of education by the act during the year and a half intervening between the date of the passage of the act and the election in November, 1921, of a new board of education, should be performed? In the absence from the act of a provision abolishing the present board or otherwise depriving it of the authority to perform such duties, the answer must be that it could act with reference to whatever concerned the government, maintenance or welfare of the public schools of Owensboro; and as the questions of determining the necessity of incurring the indebtedness of $300,-000.00, in aid of the city's public schools, and calling the election for having its voters determine whether bonds should be issued to that amount, were matters entrusted by the act to its discretion and for its action, and were not by its provisions deferred for performance by a

board to be subsequently elected, neither the legality of those acts nor the validity of the bonds successfully can be questioned.

If appellant's contention that the action thus taken by the present board of education should have been left to the performance of the board of education by which it will be succeeded after the November election, 1921, is sound, then the manifold duties which are expressly imposed by the act upon a board of education regarding the government and operation of Owensboro's public schools and which, since its passage, were necessary to be performed and have been performed by the present board, instead of being discharged by it should have been left to the performance of the board to be elected in November, 1921.

Among the duties referred to is that placed upon the board of education by section 20 of the act which provides: "The board shall in the year 1920, and every second year thereafter, or annually if they so desire, cause to be taken the census of school children of school ages, etc."

As this work was required to be done in the year preceding that in which the election of another board is required by the act to take place, it could not have been postponed until after such election, hence it must have been the legislative intent that it be done by the present board. The same is equally true of many other duties required of the board of education by the act, which are of such character that their performance can not be referred to a future board. Obviously, the meaning given the act in question by the construction urged by appellant would greatly hinder and delay the putting into effect of its salutary provisions, stop the machinery of the school government and probably prove hurtful to the public school system of the city of Owensboro and others of its class.

Extending the reasons already stated for our conclusion that the board of education of the city of Owensboro, as now constituted, had the authority conferred by the act, *supra,* to call the special registration and election for having determined by the voters of the city whether there should be a bond issue of $300,000.00 for the purchase of grounds and providing suitable buildings and equipment for the schools of Owensboro; and as the voters by the required majority approved the proposition,

also authority to issue and sell the bonds as proposed, we will add that the members of the appellee, board of education, being public officers can not be deprived, by implication, of powers conferred upon them by law for public purposes. Anderson v. VanLassel, 53 N. Y. 631. An office may be abolished by the authority by which it is created; therefore a legislature has complete control over an office of its creation and may increase or diminish its authority, or abolish it, even during the term of the then incumbent. But where the office is one provided for by the constitution, it can not be abolished, or deprived of its functions by the legislature. Mechem on Pub. Officers, secs. 503-504. In Mechem on Pub. Officers, sec. 525, it is said:

"It is a constant presumption, attending the execution of official authority, where a public officer has assumed as such to do an act which could be lawfully done only under the protection and by virtue of official power, that he was authorized to do the act in the manner and under the circumstances existing and adopted in the case."

This presumption of authority also attends the official acts of a governmental board or instrumentality composed of several officers, whose acts collectively employed constitute official action of the board or instrumentality.

Whether the term of office of any member of the appellee, board of education, has expired or will expire before the election of their successors in November, 1921, is not disclosed by the record, nor is such knowledge material to the decision of this case. It is admitted, however, that each of them was duly elected to membership on the present board, and if their terms of office, respectively, have expired or should do so before the November election, 1921, they may continue in office until their successors shall have been elected and qualified; for it is the law in this jurisdiction that all state, county, city and town officers, except members of the legislature and members of the city councils, may hold over after their fixed term has expired and until their successors are elected and qualified. Const., secs. 31, 73, 91, 93, 97, 99, 101, 115, 120, 129; Byrne and Speed Coal Co. v. City Lou., 189 Ky. 346; Mattingly v. Vancleave, 22 R. 1761; Mechem on Pub. Officers, sec. 397. Finding no error in the judgment of the circuit court, it is affirmed.