# Miller et al. v. Rockcastle County.

(Decided March 21, 1933.)

C. C. WILLIAMS, S. D. LEWIS and J. J. FELTON for appellants.

H. C. KENNEDY, G. M. BALLARD and S. F. BOWMAN for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

Section 928, Kentucky Statutes, creates in each county the office of county treasurer. Section 929, Kentucky Statutes, after prescribing the terms and conditions under which he shall be appointed by the fiscal court, provides that he shall hold office for the term of four years from the first day of the regular term of the fiscal court at which he is appointed, "and until his successor is appointed and qualified."

On April 21, 1925, F. E. Miller, who was cashier of the People's Bank of Mt. Vernon, was appointed treasurer of Rockcastle county by its fiscal court, and executed bond with his father, M. J. Miller, and U. G. Baker as sureties. No successor to F. E. Miller was appointed at the end of his four-year term, and he continued to serve as treasurer until removed by the fiscal court on May 10, 1930. There was a shortage in Miller's accounts, and the county, through Miller's successor as treasurer, brought this suit against Miller, his surety, U. G. Baker, and the executrix of the other surety, M. J. Miller, to recover on the bond. At the conclusion of the evidence, the trial court directed the jury to return a verdict in favor of the county for $6,-205.28. Judgment was entered accordingly, and the defendants have appealed.

At the outset we are met by the contention of the executrix of M. J. Miller that no judgment should have been rendered against her because prior to the action there had been no demand for payment, accompanied by proper proof of the claim as required by sections 3870 to 3872, Kentucky Statutes. The record discloses the following situation: Suit was filed on October 8, 1930. On November 14, 1930, the executrix filed a general demurrer. On December 1, 1930, she filed an answer. On January 24, 1931, by agreement of parties, a special commissioner was appointed to hear proof, and settle the accounts of F. E. Miller as treasurer. On April 17, 1931, the executrix filed a demurrer, and

also a rejoinder to the reply. On April 20, 1931, the special commissioner filed a report to the effect that the audit made by J. G. Baxter, which had been checked and verified by him, showed that Miller was indebted to the county in the sum of $29,298.73. On September 9, 1931, the executrix filed a motion to dismiss the action on the ground that prior to its institution there had been no demand of payment accompanied by the proper affidavits. Thus it will be seen that the motion to dismiss for want of prior demand and proper proof of the claim was not made until several months after the executrix had filed demurrers to the petition and reply, and had pleaded to the merits by answer and rejoinder, and the special commissioner, who had been appointed by agreement to hear proof and report on the shortage, filed his report showing the amount of such shortage. In addition to all this, the court was not asked to pass on the motion. In view of these circumstances, it cannot be doubted that want of proper demand and verification was waived. E. L. Martin & Co. v. Davis' Adm'r et al., 226 Ky. 722, 11 S. W. (2d) 912; Maynard v. Maynard, 178 Ky. 332, 198 S. W. 910, and cases cited.

The further point is made that the court erred in not granting appellants a change of venue. In reply to this contention, it is sufficient to say that the refusal was proper, as ten days' notice of the application for a change of venue was not given as required by statute. Section 1095, Kentucky Statutes.

It is next insisted that the bond is invalid because no penal sum was fixed by the fiscal court as provided by sections 930 and 186d-1, Kentucky Statutes.

We ruled in Hegarty v. Arkle's Guardian, 213 Ky. 15, 280 S. W. 139, that the requirement that the bond given under section 186d-1 must contain a penal sum is directory, and not mandatory, and in Hite v. Hite's Ex'r, 133 Ky. 554, 118 S. W. 357, that a bond of one appointed testamentary trustee, conditioned as required in the will on his faithfully discharging the duties, without specifying any amount, was a good common-law obligation, and the sureties were responsible for all the moneys of the estate coming into the hands of the trustee, notwithstanding the fact that the statute provided that the bond of the fiduciary should be in a penal sum, and that the surety should not be liable beyond

such sum. Not only so, but in this case the county judge wrote in the bond the sum of $10,000 as the penal sum, and, as the sureties signed the bond with the penal sum thus fixed, and Miller, as treasurer, took possession of the office by virtue of the bond, they cannot escape liability on the ground that the penal sum was not fixed by an order of the fiscal court.

It remains to determine whether the bond is invalid because not approved by an order of the fiscal court. It is true that a supersedeas bond executed for the benefit of a litigant is insufficient to meet the requirements of the law, unless executed before, and approved by, the circuit court clerk, Milliken v. Hatter, 177 Ky. 31, 197 S. W. 511, and that an appeal bond, taken and approved by one having no legal authority to do so, is void, Cox v. Allen, 188 Ky. 598, 222 S. W. 932, but this rule does not apply to official bonds. On the contrary, the general rule, and the one prevailing in this state, is that the failure or neglect of a court, board, or officer, to approve or file an official bond, will not affect its validity, for the reason that the government is not responsible for the laches or wrongful acts of its officers. Commonwealth v. Hinson, 143 Ky. 428, 136 S. W. 912, L. R. A. 1917B, 139, Ann. Cas. 1912D, 291; 4 R. C. L. 53; Whitehurst v. Hickey, 3 Mart. (N. S.) (La.) 589, 15 Am. Dec. 167. Here the treasurer took possession of the office on the faith of the bond with the knowledge of the sureties. The bond was left with the proper custodian, the county court clerk. In addition to this, the order appointing F. E. Miller as treasurer recites: "Whereupon the said Miller appeared and executed bond, and took the oath as required by law." This, in effect, was an approval of the bond.

F. E. Miller was elected treasurer for a term of four years, which expired on April 21, 1929, and continued to hold over until May 10, 1930. It is insisted that the sureties are not liable for any defalcation occurring after the expiration of the four-year term, and, as there was no showing of any defalcation prior to April 21, 1929, appellants were entitled to a peremptory instruction. On examining the record, we find that there was some evidence of defalcation during the four-year term, and for that reason appellants were not entitled to a peremptory instruction. However, the evidence that the defalcation during that period amounted to $6,205.28 is not sufficiently clear to authorize a di-

rected verdict in favor of the county for that amount. In the circumstances, it becomes necessary to determine whether the sureties are liable for any shortage occurring during the period that the treasurer held over after the expiration of his four-year term. In some jurisdictions it is held that, where the officer may lawfully hold over after the expiration of his term, the period during which he holds over is as much a part of his term of office as that which precedes it, and his sureties are liable for any defalcation occurring during that period. Baker City v. Murphy, 30 Or. 405, 42 P. 133, 35 L. R. A. 88. On the other hand, other authorities take the view that, where an officer holds for a definite term, and until the appointment of his successor, the bond for good behavior during his term does not extend until the actual appointment of his successor, but only to a reasonable time for such appointment. 22 R. C. L. 515; Mayor, etc., of City of Rahway v. Crowell, 40 N. J. Law, 207, 29 Am. Rep. 244; Dover v. Twombly, 42 N. H. 59. An examination of the foregoing cases, whether taking one view or the other, will disclose that in each instance the right of the incumbent to hold over either until his successor was appointed, or for a reasonable time, was conceded. But, whatever may be the rule in other states, the case of Offutt v. Commonwealth, 10 Bush, 212, is controlling in this jurisdiction. There J. C. Lemon had been appointed trustee of the jury fund for Scott county under a statute providing that he should hold his office for a term of four years from his appointment, "and until his successor is appointed and qualified," and the question before the court was the liability of his sureties for funds coming into his hands after the expiration of his term and during the period that he held over. At that time the Constitution of 1850 was in force, and section 10 of article 6 of that instrument read as follows:

"The general assembly may provide for the election or appointment, for a term not exceeding four years, of such other county or district ministerial and executive officers as shall, from time to time, be necessary."

After quoting the foregoing provision of the Constitution, and declaring that the statute providing for the appointment of a trustee of the jury fund for the circuit court of each county should be construed subject to that provision, the court said:

"If the legislature could constitutionally have provided that the trustee might hold over till the qualification of his successor after the expiration of the prescribed term of office of four years, the time of such holding over could not, according to the case of Stevens v. Wyatt, etc. (16 B. Mon. 542), be properly regarded as a part of the official term, whether embraced by the bond of the trustee or not. But the above provision of the constitution not only fails to confer such power on the legislature, but expressly limits the terms of the officers which the legislature is thereby authorized to provide for to a period of four years. We must therefore conclude that the time for which Lemon had a right to act as trustee of the jury-fund by virtue of his appointment and bond of November 19, 1862, ceased at the end of four years from that time, and that the bond imposed no liability on his surety as to funds which he may have subsequently received as trustee and failed to account for."

So construed, section 10 of article 6 of the Constitution of 1850 was readopted without change in its language, and became section 107 of the present Constitution. That instrument does not provide in terms for a county treasurer. On the contrary, he is one of that class of county officers whose election or appointment for a term not exceeding four years the General Assembly was authorized to provide for. In the circumstances, the foregoing decision is directly in point, and there is no escape from the conclusion that appellants are not liable for any default occurring during the period that Miller as county treasurer held over after the expiration of his four-year term.

It is true that in the case of Byrne & Speed Coal Co. v. City of Louisville, 189 Ky. 346, 224 S. W. 883, the court announced that all state, county, city, and town officers, except members of the Legislature and members of city councils, may hold over after their fixed terms expire, and until their successors are elected and qualified, and that the same broad language was repeated in the more recent case of Booth v. Board of Education, 191 Ky. 147, 229 S. W. 84. However, an examination of these cases will show that neither involved the right of an officer provided for by section 107 of the Constitution to hold over after his term of four years had expired. That being true, they cannot

be regarded as authority for a rule different from that declared in Offutt v. Commonwealth, supra.

Lastly, it is claimed that the court erred in permitting the accountants to testify from the bank books without proof that they were regularly and accurately kept. It is true that in the case of Commonwealth v. Tate, 89 Ky. 587, 13 S. W. 113, 12 Ky. Law Rep. 1, the court, in holding admissible in evidence a passbook kept by Tate, adverted to the fact that there was proof that the passbook was regularly and accurately kept in connection with the discharge of his duties. Here it was shown that the bank books were regularly kept by Miller, who was not only the treasurer of the county, but was also the cashier of the bank. The most effective way of covering up defalcations is by false bookkeeping, and, if it were the rule that bank books kept by a defaulting public officer were not admissible in evidence against him and his sureties, without preliminary proof of their accuracy, it would make it extremely difficult in some instances, and practically impossible in others, to ascertain the amount of the shortage. We therefore rule that the evidence complained of was properly admitted.

Judgment reversed, and cause remanded for a new trial consistent with this opinion.