## Rockcastle County v. Bowman et al.

(Decided Oct. 7, 1938.)

788

JOEL M. JONES, J. J. FELTON and H. J. McCLURE for appellant.

WILLIAMS & DENNY, S. F. BOWMAN and E. BERTRAM for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

At the regular 1925 term of the fiscal court of Rockcastle county, F. E. Miller was elected county treasurer of the county for a term of four years, which expired four years thereafter in April, 1929. At the time of his election in 1925 he was cashier of the People's Bank of Mt. Vernon, Kentucky, and remained so until that bank was found to be insolvent and its affairs taken over by the Banking Department of the Commonwealth in April, 1930. When his term expired in April, 1929, the then fiscal court took no action to fill the vacancy, or to elect another treasurer for another full term as his successor. On the contrary, Miller continued to act as county treasurer until the failure of his bank in April, 1930. He, therefore, functioned as treasurer, following the expira-

tion of his elected term, for a period of one year. The statute under which he was elected (section 929 of Baldwin's 1936 Revision of Carroll's Kentucky Statutes) expressly provides that "The county treasurer so elected shall hold his office for a term of four years, *and until his successor is elected and qualified."* (Our italics.) But in the case of Miller v. Rockcastle County, 248 Ky. 290, 58 S. W. (2d) 598, we held that the provision in the statute "and until his successor is elected and qualified" violated the provisions of section 107 of our Constitution and was, therefore, void; so that, the office of county treasurer of Rockcastle county became ipso facto vacant at the expiration of Miller's four year term for which he was elected in 1925. During his combined de jure and de facto service he not only defaulted by misappropriating the funds of the county to his individual use, but he likewise deposited his trust fund in the Peoples Bank of Mt. Vernon, of which he was cashier, without it having been properly designated as depository of the county's funds and when he knew it was insolvent. The case supra (Miller v. Rockcastle County) was an action brought by the county against Miller and his bondsmen to recover the amount of the treasurer's defalcations arising from both misappropriation by him and also his liability for depositing the funds with an unsafe depository—whereby the deposit was lost to the county.

It will be found by reading that opinion that at least as much as $6,000 of the amount claimed by the county was lost by it on account of its treasurer's defalcations before the expiration of the four year term for which he was elected. His defalcations thereafter—as well as his negligent handling of the funds—continued until he was ousted in April, 1930, covering the period of his de facto serving as such county treasurer, and at that time they amounted to something more than $16,000. The appellee and one of the defendants below, S. F. Bowman, was, at the regular election in 1929, elected county judge of the county and was inducted into that office on the first Monday in January, 1930, executing bond with the other appellees and defendants as his sureties. After the county's failure to recoup its losses—which it attempted to recover in the action supra, against Miller and his sureties, for the reasons stated in that opinion, and on August 21, 1935—the county filed this action in the

Rockcastle circuit court against defendants Bowman and his sureties to recover its total loss ($16,000) brought about in the manner stated, less a dividend of something more than $4,000 that it had realized from the assets of the depository bank—all of which at that time had been collected and distributed among creditors, which left in round numbers $12,000 of the county's funds uncollected.

The ground averred in the petition upon which recovery against the county judge and his sureties is sought is, that it was the duty of Bowman, after he was inducted into the office of county judge in January, 1930, to immediately ascertain the facts of Miller's defalcations, as well as the fact of his usurpation of the office because of the absence of his right to hold it, or to attempt to discharge its duties following the expiration of his four year term, and that he "negligently, fraudulently and knowingly" failed to do so; but on the contrary has "permitted the funds belonging to the county to be placed in a bank which was at the time operating unlawfully, and at a time when the county treasurer was not qualified to act as such." It was, therefore, charged in the petition that "It was the duty of the county judge immediately after he entered upon the duties of his office to call the fiscal court together and elect a county treasurer and require the county treasurer to execute bond"; but that he failed to do so though possessing knowledge of the expiration of Miller's term nine months prior thereto, and also with the knowledge that the depository chosen by Miller (Peoples Bank of Mt. Vernon) "was in a dangerous condition."

Defensive pleadings put in issue every fact charged in the petition, except that of defendant having been elected to the office of county judge in 1929 and his qualification at the beginning of the year, 1930. Of course the record contains the usual demurrers and other motions not necessary to mention, and the case went to trial before a jury on the supposed meritorious issues made by the pleadings—the principal one of which was the alleged negligent conduct of the defendant Bowman between the time he was inducted into the office of county judge in January, 1930 and April 21, of the same year, which latter date was the time that the bank failed and Miller was ousted as de facto treasurer. The alleged negligent acts during that short

period are of course the only ones upon which recovery could be had, since it is too clear for argument that he could not be held liable for defalcations of Miller occurring prior thereto, either while serving de jure or de facto as treasurer of the county (see Miller Case, supra) unless, perhaps, he (Bowman) and the other members of the fiscal court could have by proper procedure collected a portion or all of the prior defalcations, but knowingly failed and neglected to do so whereby the county lost an available recovery, but which later became of no avail and was lost because of their neglect. However, recovery for such prior defalcations is not sought upon any such latter ground, the only relied on omissions of duty being that Bowman, after his induction into office, neglected to oust Miller and then call the fiscal court together for the purpose of electing a treasurer of the county, and, of course, taking a new bond of the newly elected one; but which bond—if that procedure had been followed—would not secure any of the prior defalcations of Miller. Therefore, Bowman's liability, under the theory adopted in the petition, is measured by the defalcations of Miller occurring *after* Bowman assumed the duties of his office of county judge, which as we have seen was from the first Monday in January, 1930 to April 21, of the same year. Nowhere in the petition was it alleged the amount of the defalcations occurring within that period, nor does what is called and referred to as the bill of evidence in the record before us anywhere disclose by any witness the amount of any defalcations occurring within that period, or even whether or not any defalcations at all occurred within it.

The case was submitted to the jury under the instructions of the court and it returned a verdict for defendants, followed by a judgment dismissing the petition. Plaintiff's motion and grounds for a new trial were overruled and from the judgment so rendered it prosecutes this appeal. The grounds relied on in the motion for a new trial are: (1) "Errors of law occurring in the trial and excepted to by plaintiff"; (2) the verdict is flagrantly against the evdience; (3) "that the court refused to instruct the jury on all the law of the case and refused to give the instruction submitted by plaintiff"; (4) "improper argument of counsel for defendant," and (5) refusal of the court to sustain plain-

tiff's motion for a directed verdict in its favor made at the close of all of the testimony.

Ground (1) was and is too general to be considered by us, as was held in the cases of American Credit-Indemnity Company v. National Clothing Company, Ky., 122 S. W. 840; McLain v. Dibble & Co., 13 Bush 297; Slater v. Sherman, 5 Bush 206; Commonwealth v. Williams, 14 Bush 297; Louisville, C. & L. R. Co. v. Mahony's Adm'x, 7 Bush 235; Ohio Valley R. & Mining Company v. Kuhn, 5 S. W. 419, 9 Ky. Law Rep. 467; Jones v. Wocher, 90 Ky. 230, 13 S. W. 911, 12 Ky. Law Rep. 105, 13 S. W. 911; Ortwein v. Droste, 191 Ky. 17, 228 S. W. 1028, and Engleman v. Caldwell & Jones, 243 Ky. 23, 47 S. W. (2d) 971. Ground (3) amounts to no more than registering a complaint because of the failure of the court "to give the instruction (singular) submitted by plaintiff," since it is not the duty of a trial court to instruct upon the whole law of the case in a civil action, and the inserted language forming that ground complains of only a single instruction. No order or other entry in the entire record discloses any instruction offered by plaintiff, except the peremptory one which the court refused and which forms the basis of ground (5) contained in the motion for a new trial. Hence, neither grounds (1) nor (3) may be considered by us in any event; and for reasons now to be stated we are without authority to review or determine the other grounds—(2), (4) and (5).

The case was tried during the January 1937 regular term of the Rockcastle circuit court at which the plaintiff was given time "to and including the 7th day of the April term 1937 of the Rockcastle circuit court, to prepare and submit its bill of exceptions herein." On the 19th day of that April term—which was the last day of the extended period for the purpose—plaintiff filed its bill of exceptions, but with which there was no stenographer's transcribed "Bill of Evidence." Ten days thereafter and on April 29 of the same year, and during that term (but after plaintiff had filed its schedule and given defendants notice thereof) plaintiff presented to the court and moved to file the stenographer's transcript of the evidence, to which defendants objected upon the ground that the extended time for completing the record had expired. The court sustained their objection and declined to permit the tendered bill of evi-

dence to be filed. No action thereafter was taken by original proceedings in this court or otherwise—to review that refusal order of the court, and to restore plaintiff's right to have the bill of evidence made a part of the record, if it could then be legally done. On the contrary, it did nothing but bring its alleged bill of evidence to this court along with the transcribed clerk's record of the case, and file it in this court as a part of that record.

Our examination of it fails to disclose any approval of it by the presiding judge at the trial of the case. So that, if it had been offered in time, or had been actually filed in time, it is probable that it could not be considered because not so approved. But, waiving that question, it is the firmly settled rule of practice in this jurisdiction that a bill of exceptions (including bills of evidence) must be filed in the trial court—in order to be considered by this one on appeal—either during the term at which the trial of the cause was had, or within an extended time not beyond a day fixed in the extension order of the succeeding regular term of that court. Cases announcing that rule are too numerous to be incorporated in the opinion and we append only some of the later ones. Grigsby v. Smith, 174 Ky. 819, 192 S. W. 856; Tipton v. Commonwealth, 207 Ky. 685, 269 S. W. 1007; Patrick v. Commonwealth, 213 Ky. 509, 281 S. W. 498; Fidelity & Deposit Company of Maryland v. Jones, 256 Ky. 181, 75 S. W. (2d) 1057; Wilson v. Louisville & Nashville Railroad Company, 257 Ky. 144, 77 S. W. (2d) 416; Asher v. Nuckols, 253 Ky. 223, 69 S. W. (2d) 331, and Stidham v. O'Neal's Adm'r, 262 Ky. 757, 91 S. W. (2d) 45. See, also, other cases cited in those opinions.

That rule applies to a separate "bill of evidence" from a regular "bill of exceptions" (when they are so separated) and which was so held by us in the Asher Case, supra, in which we said, inter alia [page 332]: "And even though the bill of exceptions is filed in time but the transcript of evidence is not, the evidence will not be considered." Some of the other cited opinions are to the same effect with reference to the filing of a bill of evidence separate and apart from the filed bill of exceptions, and in all of them it was held that, though the latter, i. e., bill of exceptions alone, might be filed in time, yet if it did not contain the evidence heard at the

trial, and the omission was sought later to be supplied by a bill of evidence, the latter should be filed within the time allowed for filing of bills of exceptions. Wherefore, defendants' motion to strike from the record the interpolated volume with the transcript containing what is alleged to be the evidence heard at the trial will have to be and it is sustained.

The rule is equally well settled, as will be seen from some or all of the cited cases supra, that with the evidence out of the record the only question to be considered by this court is whether or not the pleadings support the judgment. Even if plaintiff's pleadings by any sort of permissible inference (since no express averment of such fact or facts is made) could be construed as seeking a recovery for defalcations made after Bowman's installation in the office of county judge of his county, then defendants' answer put in issue all such inferred allegations, and which placed the burden on plaintiff to prove such vaguely alleged facts, if so made. It would, therefore, become necessary to look to the evidence to see whether or not that burden was met; but if it is not legally here we can not make the necessary observations. In such circumstances it will be presumed that the evidence heard sustained the verdict of the jury, and the same rule applies as to every other material fact necessary for recovery.

The pleadings sustain the verdict, and for the reasons stated, the judgment is affirmed, with no expression of opinion as to the liability of defendant upon the facts alleged, if they had been proven or admitted.