## Pinson, Jr. v. Morrow, Governor.

(Decided October 15, 1920.)

### Appeal from Franklin Circuit Court.

1. Municipal Corporations—Quorum of Council—Number That May Compose.—The legislature may provide that one-half the members of the city council shall constitute a quorum for the transaction of business, and it is no objection to the act if it also provides that the mayor shall be present to make the quorum although he cannot vote.

2. Municipal Corporations—Mayor—Quorum of Council.—Where an act provided that one-half of the members of the council, together with the mayor, should constitute a quorum for the transaction of business the fact that the mayor could not vote unless in case of a tie did not invalidate the act, or an ordinance thereunder which was adopted by the votes of one-half of the members of the council.

3. Municipal Corporations—Officers—Appointment by Council.— Section 3550 of the statutes applies to original appointments and section 3551 to vacancy appointments, and an outgoing council may make a vacancy appointment that will carry the appointee through the term of the next council.

WILLIS STATON, E. D. STEPHENSON and HOBSON & HOBSON for appellant.

CHARLES I. DAWSON, Attorney General, J. W. JEFFERS and J. J. MOORE for appellee.

Opinion of the Court by Chief Justice Carroll— Affirming.

This is a controversy over the office of police judge of Pikeville, a city of the fourth class.

There is no dispute about the facts. At the November election, 1917, Sydney Trivette was elected police judge for a term of four years, beginning on the first Monday in January, 1918. In August, 1918, Trivette resigned and W. W. Reynolds was appointed by the council to fill the vacancy. At the November election 1919, George W. Pinson, Jr., became a candidate before the people for the office of police judge to fill what he thought was the vacancy caused by the resignation of Trivette, and received a majority of the votes. After that election and before the council then elected had qualified, Reynolds resigned as police judge and on the same day the outgoing council passed an ordinance or resolution appointing him police judge for the remaining term of Trivette which would expire on the first Monday in January, 1922.

When the new council elected in November, 1919, came into office it appointed Pinson in December, 1919, to fill the vacancy for the remainder of Trivette's term. The Governor of the state issued a commission to Reynolds as police judge, and Pinson brought this suit to obtain a commission and for possession of the office. The circuit court decided in favor of Reynolds and Pinson appeals.

Pinson claims the office under his election by the people in November, 1919, and also his appointment in December, 1919, by the council that was elected in November, 1919, and took office a few days later, while Reynolds claims the office by virtue of his appointment in November by the old or outgoing council after the November election 1919, but before the new council went into office.

The correctness of the decision of the lower court depends on the solution of three questions raised by counsel for Pinson, but before stating these questions reference to the Constitution, the statute, and the proceedings of the council should be made. The Constitution provides in section 160 that "a mayor or chief executive and police judges of the towns of the 4th, 5th and 6th classes may be appointed or elected as provided by law."

Section 3510 of the Kentucky Statutes provides in part that a judge of the police court "shall be elected by the people at the general election in November or ap-

pointed by the board of council as the board may determine by ordinance enacted at least sixty days previous to any election in November, and who shall hold his office for the term of four years."

Section 3486, previous to 1918, provided that the mayor should be chairman of the board of council, and further provided that "a majority shall be a quorum of the board with power to act, and in the absence of a quorum two members shall have power to adjourn from time to time until a quorum is secured," but in 1918 that section was amended so as to provide that "a quorum shall consist of a majority of the board or of one-half of the members of the board and the mayor."

In section 3502 of the statutes it is provided that "the mayor or chief executive shall preside at all meetings of the board of council and decide all points of order. He shall only vote in case of a tie."

It will be observed that when Trivette was elected police judge in November, 1917, for a term of four years, his election was by the people, because at that time the council had not by ordinance provided that the police judge should be appointed by the council, but in March, 1919, the council adopted an ordinance providing that the police judge and other city officers should be appointed by the council to hold their terms of office as provided by law, and repealed the ordinance previously passed providing that a police judge and other officers should be elected by the people.

The council was composed of six members, and when this ordinance of March, 1919, was adopted it appears that there were present and voting only three members of the council, all of whom voted for the ordinance. The mayor was also present but did not vote although he approved the ordinance. It was pursuant to this ordinance that the old council on November 12, 1919, appointed Reynolds police judge to fill the vacancy in the office caused by the resignation of Trivette for the remainder of his term, which expired in January, 1922.

After the new council went into office and in December, 1919, it enacted an ordinance setting aside and holding for naught the ordinance adopted on November 12, 1919, by the old council appointing Reynolds police judge, and proceeded to and did enact an ordinance appointing Pinson police judge in his place to fill out the remainder of the term of Trivette.

On this appeal it is contended, first, that the amendatory statute of 1918, providing that three members of the

council and the mayor should constitute a quorum for the transaction of business is unconstitutional; second, that the ordinance adopted by the board in March, 1919, providing for the appointment of a police judge by the council was not a valid enactment; and third, that the ordinance adopted by the old board just before it retired from office appointing Reynolds police judge was void in so far as the appointment attempted to continue Reynolds as police judge after the term of this appointing council had expired, upon the ground that the old council did not have power to appoint officers for a term longer than their own.

It is insisted by counsel for Pinson that the legislative amendatory act of 1918, which provided that a quorum might consist of three members of the board and the mayor, violated section 160 of the Constitution in attempting to confer upon the mayor legislative power by enabling him, in connection with three members of the council, to make a quorum for the transaction of business by the council. The legislature might have provided that three members of the council or one-half of the members should constitute a quorum for the transaction of business, and, this being so, we are unable to perceive how the mere fact that the act declared that the presence of the mayor should be necessary to make a quorum in certain conditions rendered it unconstitutional.

The act does not confer upon the mayor the power to vote or take part in the proceedings of the council, except in making a quorum. He can only vote in case of a tie. The ordinance in question was adopted by the votes of the three members of the council who were present, and the legislature provided, as it had the right to do, that three members of the council might transact any kind of business. All that the mayor did was to be present at the meeting and approve what the three members did after they had acted.

If the legislative act had provided that the mayor should have the right to vote in the enactment of all ordinances, or that his vote might be counted if necessary in order to make one-half of the council present, there would be much force in the argument that the legislature could not confer this power on the mayor, and in this way invest him with power to act at all times as a member of the council. But we have no such question here. The legislature did not undertake to do this, but thought it wise to provide that the mayor should be necessary to constitute a quorum in order that one-half of

the members of the council might be able to transact business.

The Constitution in section 156 has left it to the legislature to provide how cities and towns should be organized and to enact laws for their government, and as the mayor is the chief officer of the city or town it was very proper that the legislature should provide that he should be present at meetings of the council, not that he might vote unless there was a tie, but that he might lend his assistance to the members of the council, and if there should be a tie break it by his deciding vote. The legislature, as we have seen, had the power to enact that one-half of the members of the council should constitute a quorum for the transaction of business, and having this power it also had the power to direct that the mayor should be present, and if only one-half of the council was present his presence should be necessary to constitute a quorum.

It is next insisted that the ordinance of March, 1919, is invalid because the mayor did not vote, and therefore no quorum was present. The mayor had no right to vote because there was not a tie. The ordinance was adopted by the votes of the requisite number of councilmen to make it effective, although under the statute these three councilmen in the absence of the mayor would not have constituted a quorum. But when the mayor was present to make the quorum then the three members present had the right by their own votes to adopt the legislation. We do not mean to say that if two members of the council had voted for the ordinance and one against it it would not have been legally adopted. That question is not here and we need not in this case express any opinion on the subject.

The remaining question is: for how long a term did the appointment of Reynolds run? The term of the police judge, whether elected by the people or appointed by the council, is four years, while the term of councilmen is only two years, and so one council has the power to appoint a police judge for a term that will extend entirely through the term of its successors in office, although its successors might not have appointed the same man police judge that they did. Clift v. Rice, 185 Ky. 830.

It is provided in section 3550 of the statutes that, excepting members of the council who take their office on the first Monday in December after their election, "all other officers, whether elected or appointed, shall begin their respective terms on the first Monday in January following. If appointed, said officers shall be appointed

by the board of council elected at the preceding November election." It is further provided in section 3551 that "if a vacancy shall occur in any office which the board of council has the right to fill by appointment such vacancy may be filled by the board for the remainder of the term of such vacant office."

Reynolds was appointed by the outgoing council in November, 1919, to fill the vacancy, and pursuant to section 3551 the board appointed him for the remainder of the term of the vacant office. This appointment carried him to January, 1922, as that was the end of the term to fill the vacancy to which he was appointed.

Section 3550 applies to original appointments, not to vacancy appointments, while section 3551 applies only to vacancy appointments, and as the appointment of Reynolds was not an original but a vacancy appointment he could only be and was appointed to fill out the term in which the vacancy occurred.

It follows from what we have said that the election by the people of Pinson in November, 1919, was a nullity, because under the ordinance adopted in March, 1919, the police judge, whether as an original or a vacancy appointment, must be appointed by the council and not elected by the people. It also follows that the appointment of Pinson in December, 1919, by the new council was a nullity, because at that time Reynolds was filling the office by virtue of his appointment by the old council, and hence there was no vacancy to be filled at the time the new council assumed to appoint Pinson.

Wherefore, the judgment is affirmed.