## CAWOOD v. HENSLEY.

Court of Appeals of Kentucky.
March 7, 1952.

R. Campbell Van Sant, Frankfort, Ray O. Shehan and Daniel Boone Smith, Harlan, for appellant.

R. Kent Sampson, J. S. Greene, Jr., Harlan, for appellee.

STANLEY, Commissioner.
The issue is whether the appellant, W. Bruce Cawood, is entitled to the office of

chief of police of Harlan. He appeals from an adverse declaratory judgment.

As authorized by KRS 95.720(1) the council of Harlan enacted an ordinance on May 4, 1949, providing that the chief of police should thereafter be elected by the voters. The office had theretofore been. filled by appointment of the council. At the election in November, 1949, John L. Greenlee was elected for a four year term, beginning January 2, 1950. He resigned March 8, 1950. On March 13, 1950, the council repealed the ordinance of May 4, 1949, thus endeavoring to reinvest itself with the power of appointment. At the same session, March 13, the council appointed Logan Middleton to fill the vacancy. Middleton resigned August 13, 1951, and W. Bruce Cawood was appointed to fill the vacancy created first by Greenlee's resignation then Middleton's resignation. In naming Middleton, the council merely accepted his application for the place and did not declare whether it was to fill a vacancy in an elective office or an original appointment.

The resolution naming Cawood recites that it was under the Civil Service statute, KRS 95.761, within which the city had brought itself in September 1950, but that "if it should be construed that the chief of police is not under Civil Service," then Cawood was appointed to fill the vacancy created by Greenlee's resignation. Thus, it is made uncertain as a matter of law whether Cawood's appointment was (1) to fill a vacancy "in any elective city office * * * subject to the provisions of § 152 of the Constitution", KRS 86.240, which would be until a special election could be had to fill the unexpired term, or (2) an indefinite term under the Civil Service statute, KRS 95.762(4), or (3) for two years, the term provided where the council has the original appointing power, KRS 95.-720(3).

In the apparent belief that the ordinance of March 13, 1950, which returned to the council the original or exclusive power of appointing the chief of police, could not become effective until after the term for which Greenlee had been elected had expired, namely, the first Monday in January, 1954 (proposition (1) above), F. S. Hensley had his name placed on the ballot at the November, 1951, election as a candidate for the unexpired term, and he received a majority of the votes. He complied with the formalities of qualifying for the office and demanded its possession of Cawood but was refused. Hensley then filed this suit charging Cawood to be a usurper and asking that he be placed in immediate possession of the office. The trial court sustained Hensley's contention.

■ The essential question is whether it was proper for the election to be held in which Hensley was the successful candidate because he must recover the office from the alleged usurper on the strength of his own and not on the weakness of Cawood's title to it. Sec. 483, Civil Code of Practice; Saylor v. Rockcastle County Board of Education, 286 Ky. 63, 149 S.W.2d 770. The answer rests on the validity or invalidity of the action of the council in assuming the power of appointing the chief of police under KRS 95.720(1), and the effect of holding the election in 1951 instead of 1950 under the terms of Sec. 152, Constitution, and KRS 86.240(1).

The statute contemplates the appointment of a chief of police by the council of a city of the fourth class but permits the council "by ordinance enacted not less than sixty days previous to any November election, to provide for his election by the voters of the city." KRS 95.720(1). Where the chief of police has been appointed by the council, it is for a term of two years. KRS 95.-720(3). Where he has been elected by the people, the term is four years. Sec. 160, Constitution, City of Pikeville v. Stratton, 257 Ky. 320, 78 S.W.2d 12.

May the council during that term change the method of selection and reinvest itself with the appointing process? If it may, then Hensley's election in November, 1951, was a nullity. If the change back to the original method of appointing was illegal, then Hensley has the right to the office and, therefore, may maintain the action against the incumbent as a usurper.

The circuit court delivered an opinion taking cognizance of Pinson v. Morrow, 189 Ky. 291, 224 S.W. 879, upon which the

appellant, Cawood, relies, but regarded the applicable language as dictum. The case involved the office of the police judge of Pikeville, also a city of the fourth class. Trivette had been elected by the people. He resigned, and the council named Reynolds to fill the vacancy. Thereafter, in March, 1919, it passed an ordinance repealing the former ordinance and providing that the police judge should be appointed by the council. Pinson became a candidate at the ensuing November election and received a majority of the votes. Immediately thereafter Reynolds resigned, but the council renamed him to fill the vacancy created by Trivette's resignation. The opinion states one of three questions raised to be the validity of the ordinance of March, 1919, providing for the appointment of the police judge by the council. After full consideration of other questions, the opinion held Reynolds' appointment was not an original one under the new ordinance but was made under Sec. 3551, Ky.Stats., which gave the council power to fill a vacancy in the office for the remainder of the elected term. (It should be noted Sec. 3551 was later amended in respect to filling a vacancy in an elective office as it now appears as KRS 86.240(2).) However, in closing the opinion, the writer stated that Pinson's election in November, 1919, was a nullity "because under the ordinance adopted in March, 1919, the police judge, whether as an original or a vacancy appointment, must be appointed by the council, and not elected by the people." [189 Ky. 291, 224 S.W. 882.] This recognized as valid the reinvestment of the appointing power, though such recognition was not necessary to the decision, and the statement was made without analyzing or even discussing the proposition.

■ We have examined the original Pinson record. The validity of the ordinance of March, 1919, was merely lurking in it. There was some argument as to its retroactive effect and the legal right of the same councilmen to invest themselves with the power and then exercise it in order to circumvent newly elected members. As stated, the case was decided upon other grounds and the reference to the validity of the particular ordinance was surplusage. A statement in an opinion not necessary to the decision of the case is obiter dictum. It is not authoritative though it may be persuasive or entitled to respect according to the reasoning and application or whether it was intended to lay down a controlling principle. Utterback's Adm'r v. Quick, 230 Ky. 333, 19 S.W.2d 980. With his rare felicity of expression, Chief Justice Marshall, speaking again for the court, in Cohens v. Commonwealth of Virginia, 6 Wheat. 264, 339, 5 L.Ed. 257, 290, in respect of certain general expressions he had made in Marbury v. Madison, 1 Cranch 137, 2 L.Ed. 60, said: "It is a maxim not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision. The reason of this maxim is obvious. The question actually before the court is investigated with care, and considered in its full extent. Other principles which may serve to illustrate it are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated."

Therefore, the statements in Pinson v. Morrow, supra, concerning the validity of the ordinance, which undertook to reinvest the council with the original power of appointment, are disapproved.

The question of the proper construction of the statute in relation to the facts of this case is before us as an original one.

■ We recognize the power of a legislative body, whether state or municipal, to abolish an office of its own creation during the term of the incumbent. Booth v. Board of Education, 191 Ky. 147, 229 S.W. 84; Board of Councilmen of Frankfort v. Brawner, 100 Ky. 166, 37 S.W. 950, 38 S.W. 497. But that is not the point here. The council's action was, of course, controlled by the statute and the Constitution. We have only the question of authority of the city council. Once having exercised it in conformity to the statute, may it exercise it again during the four year term for which

the people elected the incumbent and thereby shorten that term? The council had in May, 1949, established, by virtue of Section 160 of the Constitution, the term of the elected officer as four years. City of Pikeville v. Stratton, supra, 257 Ky. 320, 78 S.W.2d 12.

Neither the General Assembly nor any city legislative body may reduce the term of an office when it is fixed by the Constitution. Thus, in Baker v. Combs, 194 Ky. 260, 239 S.W. 56, the council of Hazard, under the authority of Sec. 3504, Ky.Stats. (now KRS 95.720), had prescribed the election of a chief of police by the voters and Combs had been elected in November, 1919. At that time the statute prescribed a term of two years. At the end of such period Combs was re-elected, but the council refused to recognize his right to the office and appointed one Wooton. In opposition to Comb's suit to have his right recognized, it was contended the ordinance providing for the election of chief of police by the people was invalid upon several procedural grounds, but if valid, the ordinance was confined only to the November, 1919, election and for that reason the election in 1921 was a nullity. The court held the provision of the statute limiting the term to two years was void as in conflict with Sec. 160 of the Constitution declaring that the term of an elected officer shall be four years: hence, that when the council had changed the office of chief of police from an appointive to an elective one, the provisions of Sec. 160 of the Constitution applied and the incumbent had a four year term. In short, the court held it was not competent for the legislature to shorten the term of an elected officer. We further held that the ordinance making the change from appointive to elective controlled until it should be repealed.

See also Watkins v. Pinkston, 190 Ky. 455, 227 S.W. 583; Booth v. Board of Education, 191 Ky. 147, 229 S.W. 84.

The provisions of Sec. 160 of the Constitution relating to the terms of all offices became an integral part of the statute, KRS 95.720(1), though not expressly mentioned. But we need not ascribe to the legislature any intent to ignore or avoid the constitutional provision, or to authorize any city of the fourth class to do so, merely because it omitted a specific provision for a four year term for an elected chief of police. The statute authorizes a change in the method of selecting such officer by the adoption of an ordinance "not less than sixty days previous to any November election". That must be construed to mean any November election at which the office should be regularly filled. The word "term" denotes a fixed and definite period and is distinct from "tenure" of the officer. Kratzer v. Commonwealth, 228 Ky. 684, 15 S.W. 2d 473; Mullins v. Jones, 290 Ky. 796, 162 S.W.2d 761. If the council could not shorten the term while the elected officer was still occupying it, then it could not do so because the office had become vacant. Its authority to fill the vacancy was KRS 86.240(1), which was by appointment until there should be a special election.

The vacancy in the office had been temporarily filled by the appointment of the council. The special election for the unexpired term should have been held in November, 1950, for it appears there was a regular election of members of the board of education of the Harlan Independent School District at that time. Sec. 152, Constitution; KRS 160.020, 160.200; Ward v. Siler, 272 Ky. 424, 114 S.W.2d 516. Does the failure to hold the special election at that time invalidate the election held in 1951? The question seems to be one of first impression. The policy of government as declared in Sec. 152 of the Constitution is that a vacancy in an elective office shall be filled by the voters as soon as it may be done conveniently and without great expense. But if, through oversight, the election is not held at the designated time, there is no conceivable reason for believing that the power was exhausted or the provision of the Constitution was rendered inoperative so that the special election could not be held at the next regular election coming within the terms of Sec. 152. We, therefore, hold that the election was authorized.

The judgment is affirmed.