RENDERED:  JUNE 25, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1192-MR

SPEEDWAY LLC                                 APPELLANT

               APPEAL FROM CLAY CIRCUIT COURT
v.          HONORABLE OSCAR GAYLE HOUSE, JUDGE
                 ACTION NO. 08-CI-00033

TERESA GRUBB
and RANDY GRUBB                             APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  COMBS, KRAMER, AND K. THOMPSON, JUDGES.

KRAMER, JUDGE:  On February 1, 2007, Teresa Grubb was at a Speedway

SuperAmerica filling station in Manchester, Kentucky, when she tripped and fell

after stepping into a pothole.  She and her husband, Randy Grubb, then

respectively filed negligence and loss of consortium claims in Clay Circuit Court

against the owner of the premises, Speedway LLC.  Following a bench trial, the

circuit court (after several appeals spanning over a decade) ultimately entered a judgment in favor of the Grubbs consistent with a determination that Speedway was comparatively negligent and at fault by a margin of eighty percent. Speedway now appeals, contending the circuit court's apportionment of fault either violated the law of the case or constituted clear error. Upon review, we disagree and affirm.

The circuit court aptly summarized the evidence it deemed relevant to the issue of apportionment as follows:

**Testimony of Roxanne Smith**:

Roxanne Smith testified that she began work for Speedway SuperAmerica (Speedway) in 2004 and became the manager of the store in question October of 2006. She had had twenty to twenty-five years of experience in convenience or carry out stores. She would arrive at the store at 4:15 a.m. At 5:00 a.m. the lights would be turned on, and she would return to the outside premises to make sure everything was alright.

She also testified that she walked the lot at least two times per day. She swept the outside premises daily, and a leaf blower was used to remove debris. There were three inspections per day of the outside premises. Storm water drained from the premises through this primary drain where the hole was located that caused Grubb to fall. In addition, mop water was poured into the drain, which was located under a canopy.

According to her testimony at trial, Smith never noticed the hole before Teresa Grubb fell on February 1, 2007. At trial Smith was asked, "The hole that is the focal point of this whole action, did you notice this hole

before February 1, 2007?" She answered "No, I did not." [Trial Video 01:03:28-01:03:38].[1] The follow up question was, "Yet for more than 15-16 months from October 06, five days per week you inspected this parking lot, looked at the pumps on a daily basis and you never noticed this depression, never noticed this hole?" She responded, "No, I did not." [Trial Video 01:03:38-01:04:00]. After further cross examination she was asked, "And it is still your testimony that you never noticed this depression or hole in the drain of the general area of the drain is that correct," to which she gave an affirmative response that she had not. [01:05:28 et seq.] During cross examination by her attorney, she was again asked about the pothole. She was asked why this pothole was not reported to district management. She testified, "I didn't feel it was hazardous, I didn't know about it either. I didn't notice it." [17:38-17:57]. The policies and procedures of Speedway required that any large crack or pothole be reported to corporate.

After Teresa's fall, Smith was assisted by Lauren Sizemore in taking pictures and measurements of the hole where Grubb fell. These photographs were forwarded to corporate. According to Smith, one of the photographs showed a ruler being placed in the hole. She testified the hole was one inch deep. This photograph was never produced in discovery and was not produced at trial.

Smith acknowledged that asphalt patch could be purchased for $6.95. Asphalt patch could be poured directly into the hole. She testified that she probably could not have done that by herself because of the weight of the asphalt patch bag, which was sixty pounds.

---

[1] The bracketed citations to evidence and the video record of the trial included within the quoted portions of the circuit court's findings are, to be clear, the circuit court's citations and not ours. As indicated later in this Opinion, this Court cannot independently review any video footage of the trial, nor any of the evidence presented at the trial because Speedway failed to designate any of it as part of the appellate record.

The drain where the hole was located is straight across from the only exit door by which Grubb and Gregory could exit the store to return to their vehicle. The hole lies in the path of the shortest route back to vehicles located at the outside island. Grubb and Gregory's vehicle was located on the inside lane of the outside island. It is a high pedestrian traffic area.

**Testimony of Carolyn King**:

Carolyn King was a cashier at Speedway. She had just gotten off work the night Grubb fell, but she did not see the fall. She had already clocked out before she saw Grubb on the ground. She went to Grubb and asked her if she could be of any assistance. Grubb told her no, that her friend would help her. She returned to the store and told Wendy Couch to write down the occurrence.

King testified at trial that she would sweep the outside and would also pour mop water down the drain, but that she had never noticed the hole. No other employees or customers had complained about the hole. She was asked these questions and gave these answers:

Q. There's been a discussion about the depression pictured in the pictures, prior to Ms. Grubb's fall, the month you were working there, did you ever notice that area at all.

A. No.

Q. When you were out dumping mop water, you never noticed it?

A. No.

Q. Out sweeping area, ever notice?

A. No, not really.

[Trial Video 01:05:38-01:06:07]

> Q. I believe your response to Mr. [sic] that you had never noticed that place?
>
> A. Not really.

[Trial Video 01:10:29-01:10:47]

> Q. Okay was there any speculation, or did you all talk about where Ms. Grubb may or may not have fallen.
>
> A. Well, not really, she said that Ms. Grubb said there was a hole.

She was confronted with her testimony from a prior deposition. She was asked if she remembered being asked, (1) "Okay, had you ever noticed that hole before yourself" and answering "why yeah, it had been there all the time, there's a drain there, there's a hole, and there's a drain," and (2) "Okay and that is something you had seen," and answering "yes." She could not remember being asked these questions and having given those answers. [01:10:47-01:05:38].

**Testimony of Lauren Marie Sizemore**:

Lauren Marie Sizemore was shift leader at Speedway on February 1, 2007. Prior to that she had been a cashier. She had more responsibilities as shift lead than she did as cashier. When asked what those additional responsibilities were, she could not recall.

Her responsibilities did include cleaning away trash and mopping. She mopped once every shift and sometimes more if needed. She would pour the mop water into the drain. When asked about the hole, she testified as follows:

-5-

Q. In the ten months you were out there when sweeping or inspecting the lot did you ever notice this depression we have been talking about here today?

A. No, not at all.

Q. What about when draining mop water into the grate.

A. No.

Q. Was that a no?

A. No, I'm sorry.

[Trial Video 01:15:18-01:18:35]

**Testimony of Robbie Gregory**:

Robbie Gregory testified that he accompanied Teresa Grubb to Speedway between eight and nine o'clock on the evening of February 1, 2007. They pulled to the inside of the outside lane of pumps. After fueling the vehicle, they went inside the store through the entrance door. Inside, they got a coke and cappuccino and paid for their purchases. They left through the exit door on the end of the building away from the entrance door.

While going back to their vehicle, Gregory was a step or two in front of Grubb. The two were engaged in a conversation. He turned around to look at her, and she hit the ground. Gregory did not see the area before she fell.

**Testimony of Teresa Grubb**:

Teresa Grubb and Robbie Gregory pulled into Speedway on the evening of February 1, 2007 to get

-6-

some gas. The vehicle was pulled into the inside of the outside lane of pumps. After gassing up they went inside Speedway through the entrance door. They retrieved a [C]oke and a cappuccino, paid for their purchases, and left the building through the exit door. Gregory was in front of Grubb, and they were engaged in a conversation. They passed the first lane of pumps. She felt her left foot creel,[2] and she went down. Her foot was in the hole. She did not notice the hole she was not looking down at the ground at the time she fell. Robbie Gregory's walking in front of her blocked her view except that she "could see a car or something like that." Grubb's specific testimony was as follows:

> A. Well, we was [sic] walking, and I had my cappuccino, and we was [sic] talking and we get past the first set of pumps going through there and all of a sudden, I felt my ankle creel and I was on the ground.
>
> Q. Did you know what happened at that point?
>
> A. Yeah, my foot was in a hole.

[Trial Video 05:00-05:30]

> Q. As you were walking across the parking lot, did you notice the hole?
>
> A. No. I wasn't looking down at the ground or anything I didn't notice.

[Trial Video 09:50-10:07].

---

2 Considering the repeated use of the word "creel," we can only assume this was not a typographic error and that the word has a slang meaning appropriate to the context in which it has been used. According to THE AMERICAN HERITAGE COLLEGE DICTIONARY 326 (3rd ed.1993), a "creel" is "[a] wicker basket, esp. one used by anglers for carrying fish," or "[a] frame for holding bobbins or spools in a spinning machine."

A.  Coming out, I believe he was ahead of me, not too far, and we was [sic] talking, and I wasn't drinking my cappuccino, it was hot, I don't know if he was drinking his [C]oke or not, and he was talking, and the next thing I know, I was on the ground.

Q.  Were you looking at him, you said earlier you weren't looking at the ground. You were looking like ordinarily.

A.  Uh-huh. [Affirmative]

Q.  He wasn't blocking your view or anything he wasn't that close when you couldn't see you were going?

A.  He was, I mean he was standing close to me, I could see a car or something like that.

[Trial Video 29:20 et seq.].

Next, the circuit court analyzed what it believed were seven significant factors in assigning the parties their respective shares of comparative fault, explaining in relevant part:

> **1.  It is a significant factor for purposes of apportionment that the fall of Teresa Grubb did not occur in a parking lot but in the service area between the islands where fuel was dispensed**.
>
> During the trial of this case counsel for all parties on more than one occasion referred to the area where Grubb fell as a parking lot, hence the origin of the use of [the] term parking lot in this case.  In its Findings of Fact, Conclusion of Law and Judgment this Court referred to

the location as "a hole in the parking area between the gas pumps." While this reference is technically correct, it may have in fact contributed to an incorrect nomenclature. The more appropriate description of the location of the hole area was that of the Supreme Court as "the driveway area directly between the two pump islands" or "driveway/parking portion of the premises." *Grubb v. Smith*, 523 S.W.3d 409, 413 (Ky. 2017).

Parking lots are areas where cars are left unattended while the drivers engage in conduct unassociated with the parking, e.g., go into a restaurant to eat, go into a mall to shop, or go into a theatre for a movie. The area that vehicles pull into between lanes of gas pumps for fueling does not fit into the classification of a parking lot. They are only parked there for the purpose of being serviced. Once fueled and payment is made, it is expected that the vehicle will move on so another vehicle can pull in and be serviced. Payment may be made at the pump, or the customer may go into the building and pay for their fuel and possibly make a quick purchase of a soda, candy bar, bag of chips, or pack of cigarettes. A customer cannot park his vehicle in the traffic lanes of the convenience store and attend a University of Kentucky-University of Louisville basketball game, an Ariana Grande concert, or a bass fishing tournament and expect not to be towed. For such events, there are parking lots or parking garages.

This case is a fall in the service area of a convenience store not a parking lot. It occurred under a canopy placed over the area to provide cover for customers while filling their gas tanks. Any breach of duty must be analyzed in the context of the service area of the C store not the context of wide-open parking spaces of a parking lot. As the Supreme Court made clear in *Shelton v. Ky. Easter Seals Soc'y, Inc.*, 413 S.W.3d 901 (Ky. 2013) "small changes in the facts may make a dramatic change in how much risk is foreseeable." Id. 913. "[T]he foreseeability of the risk of

harm should be a question normally left to the jury under the breach analysis. In doing so, the foreseeability of harm becomes a factor for the jury to determine what was required by the defendant in fulfilling the applicable standard of care." Id. 914.

In its first decision the Kentucky Court of Appeals concluded, "There is no evidence that Speedway knew or should have known that an invitee on its premises would blindly walk through its parking lot oblivious to common imperfections'. *Smith v. Grubb*, No. 2011-CA-000223-MR, 2012 Ky. App. Unpub. LEXIS 1066, at *29 (Ct. App. June 15, 2012). In reaching its decision the Court of Appeals relied upon *Lucas v. Gateway Cmty. Servs. Org., Inc.*, 343 S.W.3d 341 (Ky. Ct. App. 2011). It found the case at bar and *Lucas* to be similar because the plaintiff had stepped on a [sic] crumbling gravel in a parking lot. Id. *26.

*Lucas* was a true parking lot case. Lucas and a friend, Davis, went to Gateway for the purpose of Lucas signing forms so that Davis could pick up Lucas's grandchildren from Gateway's head start program if Lucas were [sic] unable to do so. They parked in the parking lot and went inside and transacted their business. On return Lucas fell because of a [sic] crumbling gravel at the location where the blacktopped part of the parking lot turned to gravel. There was no evidence of a hole. If small changes in a fact indeed make dramatic changes in how much risk is foreseeable, then certainly a change from parking in an area designed for parking (*Lucas*) and temporarily parking in a service area where you must locate yourself in the area in order to get service, (Grubb) are more than just small changes and do indeed make a dramatic difference in how much risk is foreseeable. A [sic] crumbling gravel in a parking lot differs substantially from a hole in the direct path from the inside of the building back to the vehicle where it was fueled.

After this case was remanded to the Court of Appeals for it to reconsider its decision in light of more recently decided cases, the Court of Appeals rendered its second opinion. *Smith v. Grubb*, No. 2011-CA-000223-MR, 2014 Ky. App. Unpub. LEXIS 1045 (Ct. App. Sept. 26, 2014). The Supreme Court described that opinion as follows:

> In a bow, apparently, to *Shelton's* cautioning against "no duty" rulings in "open and obvious["] cases, the Court of Appeals slightly reworded its ruling. It again insisted that the pothole at issue did not pose an unreasonable risk of injury, but now, instead of holding that the pothole did not implicate Defendants' duty to maintain reasonably safe premises, it held that their failure to fix the pothole could not be found a breach of that duty. Nevertheless, in either version, the crux of the panel's view was that the particular hazard was not "unreasonable" because only a negligent invitee would be injured by it. In effect, they held recovery was barred because the plaintiff was (had to have been) negligent – the old contributory negligence bar – precisely the outcome *McIntosh* and *Shelton* sought to correct.

*Grubb v. Smith*, 523 S.W.3d 409, 416 n.4 (Ky. 2017).

One of the examples that the Court of Appeals cited as not creating an unreasonable risk was "a small pothole in the parking lot of a shopping mall." *Smith v. Grubb*, No. 2011-CA-000223-MR, 2014 Ky. App. Unpub. LEXIS 1045, at *29 (Ct. App. Sep. 26, 2014). It concluded that "based on the facts developed at trial, the only reasonable conclusion that can be reached is the imperfection in Speedway's parking lot did not create an unreasonable risk of injury." Id. 30. It also concluded as it did in its first *Smith v. Grubb* opinion: "There is no

-11-

evidence Speedway knew or should have known an invitee on its premises would blindly walk through its parking lot oblivious to common imperfections." Id. *31. This was not a small hole in a parking lot in a mall. It was a hole in "the driveway area directly between the two pump islands" or "driveway/parking portion of the premises." *Grubb v. Smith*, 523 S.W.3d at 413.

**2. It is a significant factor for purposes of apportionment that the employees of Speedway testified that they had not noticed the hole prior to February 1, 2007, the date of Grubb's fall.**

Regarding the testimony of Speedway's employees and whether they noticed the hole that caused Grubb to fall, I made the following factual findings:

> She [Roseanne Smith] testified that she inspected and swept the parking lot on a daily basis. She further testified that she had not noticed the hole in question before February 1, 2007. Another employee, Carolyn King, likewise testified on direct examination that part of her duties included sweeping the parking lot everyday, as well as, pouring mop water into the drain which was located next to the hole in question. On direct examination at trial, Mrs. King testified that she had never noticed the hole when dumping mop water into the drain or sweeping the parking lot. On cross examination, Plaintiff's Counsel pointed out that Mrs. King had testified in her deposition, prior to trial, that she had been aware of the hole all the time and had seen it in the past when cleaning the parking lot.

The phraseology used by the Supreme Court regarding Smith's testimony varies substantially from the

findings of fact made by me. It wrote, "Smith further testified that while she was familiar with the worn patch of asphalt by the drain – she saw it at least once every day, every time she emptied out a bucket of mop water – she had not reported it to 'store support,' because in her view it was not hazardous, not the sort of 'large crack [or] pothole' Speedway wanted her to report." *Grubb v. Smith*, 523 S.W.3d 409, 413 (Ky. 2017).

In *Smith v. Grubb*, No. 2011-CA-000223-MR, 2012 Ky. App. Unpub. LEXIS 1066 (Ct. App. June 15, 2012) the Court of Appeals summarized the testimony of Speedway's employees as follows:

> Smith testified that since 2006, she had managed the Speedway store and inspected and swept the parking lot daily. Because she did not believe the pothole was a hazard, Smith did not request that the pothole be repaired.

Id. *5.

> Carolyn King and Lauren Sizemore, Speedway cashiers, testified and confirmed Smith's testimony. Additionally, King testified that although she swept the parking lot daily and poured water down the drain located next to the pothole, prior to Teresa's fall she did not observe anything that she believed posed a danger to customers.

Id. *6. The same exact summary appears in *Smith v. Grubb*, No. 2011-CA-000223-MR, 2014 Ky. App. Unpub. LEXIS 1045, *5-6. *6-7 (Ct. App. Sep. 26, 2014).

The variations between my findings of fact and the language of both the Supreme Court and the Court of Appeals is conspicuous. This prompted me to review the

trial testimony of Speedway's employees, Smith, King, and Sizemore, which is set forth above.

After review of this testimony, I have concluded that the original findings I made regarding the testimony of Smith and King are correct. All three testified that they did not notice the hole. That is the same as saying they never saw the hole. This testimony was not the same as saying that they saw the hole but did not appreciate the danger it posed. If you say you did not notice a hole, then you are saying you did not see the hole, you did not discern the hole, you did not perceive the hole, you did not behold the hole.

Regarding the testimony of three employees of Speedway, they either did not see the whole [sic] which was open and obvious, or they saw the hole and took no measures to correct it. In my findings I found, "The Court does not find the testimony of Roxanne Smith and Carolyn King to be credible, nor persuasive, on the issue as to whether or not they were aware of the existence of the hole to the parking lot and the danger it created prior to the fall of the Plaintiff on February 1, 2007. It is clear from looking at the pictures of the hole in question that it had been created by an erosion process over a period of months and months, if not years." My conclusion was reached on the basis that the physical facts (photographs) belied the truthfulness of Speedway's employees not that Speedway's employees testified that they saw the hole and did not think it was dangerous. I rejected the testimony of Speedway's employees given to downplay the length of the time the pothole had been present.

3. **The actual or constructive notice of Speedway is a significant factor weighing heavily in favor of apportioning a high percentage of the fault to Speedway.**

Actual or constructive notice of a hazardous condition is a significant factor in determining the

reasonableness of the action of the owner of the premises. *Davis v. Coleman Mgmt. Co.*, 765 S.W.2d 37, 39 (Ky. Ct. App. 1989). The condition present on the premises of Speedway was a condition that had been created by months and months, if not years, of erosion caused by water draining into the drain provided for the runoff of rain. If the employees of Speedway did not see the hole in question, they should have, thereby putting Speedway on notice of the hazardous condition. If the employees did in fact see the hole, then Speedway had actual knowledge of the condition. In either event the hole had existed for a substantial period, and Speedway had actual or constructive knowledge of the hazardous condition for many months. For purposes of comparative fault, it is appropriate to consider the length of time they knew or should have known about the hole. "[A]lthough it is true that when the danger is obvious the land possessor does not have superior knowledge, the land possessor still has the superior ability to issue repairs." *Cooper v. Steak N Shake, Inc.*, No. 5:18-CV-417-EBA, 2019 U.S. Dist. LEXIS 178665, at \*16 (E.D. Ky. Oct. 16, 2019) citing *McIntosh*, 319 S.W.3d at 393. The landowner's position is unique. Ibid.

Roxanne Smith had worked at Speedway since 2004 and had been the manager since October of 2006. Carolyn King had worked at Speedway for one month. Lauren Sizemore had worked for Speedway since April of 2006. Each testified that they daily swept the premises and poured mop water into the drain where the pothole was located. Pursuant to the policies and procedures of Speedway each was charged with the responsibility reporting [sic] large cracks and potholes to Speedway's management for maintenance repair.

There is no evidence that Teresa Grubb had any knowledge of this hazardous condition until she fell on February 1, 2007. No evidence was introduced at trial that demonstrated any prior knowledge of Grubb or Robbie Gregory, who accompanied her to Speedway on

-15-

the evening of February 1. None of the employees testified that [sic] knew or recognized Grubb. The only employee who was asked denied knowing Grubb.

Grubb left the building and followed the direct path back to her vehicle. She was using the property for the purpose it was intended to be used. She was walking to the rear and left of Gregory. This was a high traffic area for pedestrians and vehicles. During the seconds of her exiting the building, for her own safety she did need to keep an outlook for her surroundings including the ground, incoming and outgoing vehicles, and pedestrians. "It should be noted that our case law has been clear that an invitee is not required to watch each footstep as they walk." *Dick's Sporting Goods, Inc. v. Webb*, 413 S.W.3d 891, 900 n.30 (Ky. 2013). *Humbert v. Audubon Country Club*, 313 S.W.2d 405 (Ky. 1958) states: "This does not mean that one must look directly down at his feet with each step taken but, in the exercise of ordinary care for his own safety, one must observe generally the surface upon which he is about to walk." Id. 407. Grubb admits that she was not looking at the ground, but she also testified as set out above that her view as blocked by Gregory who was in front her [sic] except that she "could see a car or something like that."

"In determining the percentages of fault, the trier of fact shall consider both the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed." KRS[3] § 411.182(2). The nature of the conduct and the extent of the causal relation based upon notice and actual or constructive knowledge weighs heavily in favor of apportioning a much higher percentage of liability to Speedway as opposed to Grubb.

### 4. It is a significant factor for purposes of apportionment that Speedway had the

---

[3] Kentucky Revised Statute.

**exclusive opportunity to take steps to remedy the hazardous condition but did not do so.**

The opportunity to remedy the situation is another significant factor to consider. *Davis v. Coleman Mgmt. Co.*, 765 S.W.2d at 39. There is no evidence to show that Speedway lacked an opportunity to correct the unreasonably dangerous condition that existed on its premises. In fact, Speedway had a considerable length of time within which to repair the hole. On the other hand, Grubb was not vested with any right, authority, or opportunity to correct the situation. Speedway was in the unique position of being the only party that could provide the necessary remedial measures. As to comparative fault this factor would require almost exclusive apportionment of the entire fault to Speedway.

5. **It is a significant factor for purposes of apportionment that it was foreseeable to Speedway that an invitee to its premises might fall because of the hole in the driveway area between the two pumps.**

The entrance to Speedway's building by which Grubb entered was located at one end of the building. The check out and exit were located at the other end of [sic] building. This is a common design used by many C stores. It serves a business purpose because it requires the customer to walk past the counters lined with chips, candy bars, drinks and other assorted items arranged to prompt impulse buying. While gasoline products may produce the most revenue for a C store, it pales in comparison to the high mark up on shelf inventory.

Speedway was certainly aware that the only exit from its store led to a direct path for its customers back to their vehicles. This would be particularly true of those customers utilizing the outside lane as Grubb did. It was clearly foreseeable to Speedway that one of its customers might fall if there was a hazardous condition in its direct

-17-

path of their exit in front of incoming and outgoing traffic. A business should anticipate that rare is the customer that will not take the most direct route back to their vehicle.

*Lyle v. Megerle*, 270 Ky. 227, 109 S.W.2d 598 (1937) held that "a customer in a store may assume the floor will be free from obstructions of a dangerous nature and from a slippery spot, although he may not walk blindly, irrespective of obvious danger." Id. 301, 600-01; *Dick's Sporting Goods, Inc. v. Webb*, 413 S.W.3d 891, 900 (Ky. 2013). The same is true of a C store that provides only one exit with a direct path back to the area where he or she have [sic] fueled their vehicle. They are free to assume that such means of egress is free of hazardous conditions but not walk blindly. Again, the nature of the conduct and the extent of the causal relation weighs heavily in favor of apportioning a much higher percentage of liability to Speedway as opposed to Grubb.

### 6. The balancing of costs against the likelihood and severity of injuries weighs in favor of apportioning greater fault to Speedway.

"[I]t has been widely understood that the reasonableness of a risk involves some manner of balancing the costs or burdens of mitigating it against the likelihood and severity of the injuries it threatens. In our law, that determination, that balancing is ordinarily deemed a matter of fact to be addressed by the jury." *Grubb v. Smith*, 523 S.W.3d 409, 417 (Ky. 2017). Smith testified that she was aware that the hole could have been repaired with asphalt patch, which cost $6.95 for a 60-pound bag. The cost of the asphalt patch plus labor for pouring it into the hole is to be weighed against the likelihood and severity of injuries that are threatened.

The Supreme Court correctly described the hole as "an irregularly shaped patch of the asphalt—a foot square, perhaps, more or less—had weathered and

eroded. The erosion varied from just a fraction of an inch to what appears to be, in a small area, at least two inches and probably more. One photograph shows erosion through the top layer of asphalt to a second or even third layer below." *Grubb v. Smith*, 523 at 413. The likelihood that some invitee is going to step into this hole located in his or her direct route back to their vehicle from the inside premises of the store is great. It is well known that such falls often result in serious injuries including head injuries, back injuries, and broken bones in various parts of the body. The hole was a foreseeable unreasonable risk which Speedway did not appreciate.

### 7. It is a significant factor for purposes of apportionment that Grubb failed to exercise ordinary care in not observing the hole.

The fact that Grubb did not see the hole in question is a significant factor to consider for purposes of apportionment but must be considered in light of all the attendant circumstances including the obviousness of the hole. This was a high traffic area with vehicles approaching from both ends of the service islands over four lanes of traffic. It was also a high traffic area for pedestrians fueling their vehicles and moving back and forth between the service area and the inside of the convenience store. It is certainly foreseeable that a pedestrian walking in front might block the view of the person walking to the rear.

As indicated, after weighing the evidence and considering the factors elucidated above, the circuit court entered a judgment in favor of the Grubbs consistent with a determination that Teresa Grubb had been 20% at fault for her injuries and that Speedway had been 80% at fault. Now on appeal, Speedway's arguments are two-fold; the first of which involves the "law of the case" doctrine,

which generally provides that "an appellate court, on a subsequent appeal, is bound by a prior decision on a former appeal in the same court[.]" *Inman v. Inman*, 648 S.W.2d 847, 849 (Ky. 1982). The rule means that "issues decided in earlier appeals should not be revisited in subsequent ones." *Brown v. Commonwealth*, 313 S.W.3d 577, 610 (Ky. 2010). In this vein, Speedway points to the following passage from the Kentucky Supreme Court's opinion in *Grubb v. Smith*, 523 S.W.3d 409, 429-30 (Ky. 2017): [4]

> As Defendants correctly note, in *McIntosh* we were emphatic in pointing out that while the obviousness of the condition that occasioned the plaintiff's injury did not, under the comparative-fault approach, preclude the plaintiff's claim, "only under extremely rare circumstances" under that approach "could a plaintiff [injured by an obvious condition] avoid some share of fault." *McIntosh*, 319 S.W.3d at 392. This case does not present "extremely rare circumstances." Quite the contrary, as Teresa herself testified, it presents the utterly mundane circumstance of a person who, engaged in conversation with a friend, fails to watch where she is going and trips on an obvious flaw in the pavement. Some portion of the responsibility for her injuries should have been attributed to Teresa, but the trial court did not even address the question. We agree with Defendants that the trial court's lapse was a "substantial error" requiring us to vacate the Judgment and to remand to that court for the findings mandated by KRS 411.182(1). And *while it is for the trial court to determine in the first*

---

[4] Interestingly, the issue for which this case has seen repeated appellate review was not argued in the circuit court; nor did Speedway seek a finding under Kentucky Rule of Civil Procedure (CR) 52.04. *Grubb*, 523 S.W.3d at 430. Nonetheless, the Supreme Court excused Speedway's failure to address apportionment and determined that the circuit court had committed palpable error in not addressing it *sua sponte. Id.*

*instance the percentages of fault*, as provided for in KRS 411.182(2), we reiterate that in light of Teresa's admitted carelessness, *the percentage attributed to her should not be insignificant*.

(Emphasis added.)

Speedway further points to *Speedway SuperAmerica, LLC*[5] *v. Teresa Grubb and Randy Grubb*, No. 2017-CA-002021-MR, 2020 WL 1231606 (Ky. App. Mar. 13, 2020) (unpublished). It specifically addresses how it believes this Court, in the following passage from that opinion, further refined the Supreme Court's above-quoted statement:

> We agree with Speedway that ten percent is far from a significant amount of fault and is not much fault at all. As the term is commonly understood, "significant amount" means a noticeably or measurably large amount. Likewise, "much fault" is commonly understood to mean a large amount of fault. *We conclude that apportioning only ten percent of the fault to Teresa falls way short of implementing the Supreme Court's directions*. It does not reflect the Supreme Court's conclusion that "much" of the fault in causing her accident was attributable to Teresa or that her fault was "not insignificant." Although certainly this case needs to come to end, we are compelled to reverse and remand with directions that the trial court apportion damages in accordance with the Supreme Court's opinion in *Grubb*.

*Id*. at *4 (emphasis added.)

---

[5] While no party takes issue with it – and accordingly this Court will not take issue with it either – the appellant named itself "Speedway LLC" in its notice of appeal relative to this appeal; but, in its prior appeals in this litigation, the same appellant named itself "Speedway SuperAmerica LLC."

Citing the above-quoted language from these two appellate opinions, Speedway's argument is essentially this: Because (1) the Kentucky Supreme Court stated that "the percentage [of fault] attributed to [Grubb] should not be insignificant,"[6] and because (2) this Court held that an apportionment of ten percent of the fault was *not* "not insignificant,"[7] (3) the circuit court's latest attribution of *twenty* percent of the fault to Grubb – which is ten percent more than a ten percent share of the fault – is likewise, Speedway reasons, *not* "not insignificant." Therefore, Speedway concludes, the circuit court's order violated the "law of the case" doctrine and was thus erroneous.

We disagree. The Kentucky Supreme Court's statement that "the percentage [of fault] attributed to [Grubb] should not be insignificant"[8] appears to be *obiter dictum*.[9] Indeed, the nonbinding nature of this statement was underscored earlier (*i.e.*, in the very same sentence) by the Kentucky Supreme Court. The Court further observed that "it is for the trial court," *and not a court of review such*

---

[6] *Grubb*, 523 S.W.3d at 430.

[7] *Grubb*, 2020 WL 1231606 at *4.

[8] *Grubb*, 523 S.W.3d at 430.

[9] "A statement in an opinion not necessary to the decision of the case is obiter dictum. It is not authoritative though it may be persuasive or entitled to respect according to the reasoning and application or whether it was intended to lay down a controlling principle." *Cawood v. Hensley*, 247 S.W.2d 27, 29 (Ky. 1952) (citation omitted).

*as itself,* "to determine in the first instance the percentages of fault[.]" *Grubb*, 523 S.W.3d at 430.

Upon remand, having been tasked with "*determin*[*ing*] *in the first instance the percentages of fault*," the circuit court then found Grubb was ten percent at fault, based upon its own credibility determinations of the evidence presented. Speedway then appealed this decision.

To be sure, reasonable minds might differ regarding whether the Kentucky Supreme Court's statement regarding a "*not insignificant*" share of the fault was *dictum*. Nonetheless, this Court in *Grubb*, 2020 WL 1231606 at *4, interpreted it as the law of the case – "whether right or wrong" – and concluded that a ten percent share of fault did not meet the Supreme Court's concept of a "*not insignificant*" share of fault. Effectively, we reversed the circuit court's factual findings of comparative fault without making any determination of clear error. Nonetheless, an appeal was not taken of *Grubb*, 2020 WL 1231606; thus, we must apply the law of the case. And due to the law of the case – and thus for purposes of this case *only* – we have no choice but to follow the law of *this* case that ten percent does not meet a "*not insignificant*" share of fault. Upon remand again and after a thorough and tedious review and recitation of the evidence and detailed credibility findings, the circuit court found Grubb to be twenty percent at fault. Speedway has now appealed that determination to this Court.

That explanation is necessary to put the case into context given its history, but notwithstanding it, this ends up being of no consequence here for a most basic reason: Now, the trial court has attributed a *twenty* percent share of the overall fault to Grubb. Thus, the circuit court followed the mandate of *Grubb*, 2020 WL 1231606, having doubled Grubb's apportionment of fault. And unsurprisingly, Speedway cites no authority – nor have we discovered any – indicating that twenty percent is *not*, as a matter of law, a "*not insignificant*" attribution of fault. We agree with the Supreme Court's assessment that only the finder of fact is in the position to make this determination. *Grubb*, 523 S.W.3d at 430 ("[I]t is for the trial court," *and not a court of review such as itself*, "to determine in the first instance the percentages of fault[.]"). Accordingly, Speedway's argument in this vein lacks merit and has no authority on which to rely.

This leads to Speedway's second argument. Speedway asserts the circuit court erred because, in its view, the circuit court's findings did not adequately focus upon, or give enough weight or credence to the evidence of, Grubb's comparative negligence. In support, it directs this Court's attention to several depositions and several parts of the video record of the trial held in this matter.

As an aside, we emphasize once more that ours is a court of *review*. We do not engage in fact finding. We do not engage in weighing evidence. We do not engage in judging the credibility of witnesses. Nor, for that matter, are we authorized to dictate how a trial court *should* weigh the evidence. Instead, as it relates to the evidence, our authority is limited to an assessment of clear error. Stated differently, we only reverse a trial court's factual findings – and thus its fact-based apportionments of fault pursuant to KRS 411.182 – if, after due regard is given to the opportunity of the trial court to judge the credibility of the witnesses, those findings are manifestly against the weight of the evidence. *See Wells v. Wells*, 412 S.W.2d 568, 571 (Ky. 1967); CR 52.01.

To withstand clear error review, this Court must find substantial evidence in the record to support each disputed finding. *Gosney v. Glenn*, 163 S.W.3d 894, 898 (Ky. App. 2005). "Substantial evidence is evidence, when taken alone or in light of all the evidence, [that] has sufficient probative value to induce conviction in the mind of a reasonable person." *Id*. Thus, this Court looks to the evidence of record transmitted to it for this examination.

"It is the Appellant's duty to ensure that the record on appeal is 'sufficient to enable the court to pass on the alleged errors.'" *Smith v. Smith*, 450 S.W.3d 729, 731 (Ky. App. 2014) (quoting *Burberry v. Bridges*, 427 S.W.2d 583, 585 (Ky. 1968)). However, Speedway has put this Court at a disadvantage: *The*

*record on appeal before us contains no evidence at all*. Rather, Speedway has contented itself with ensuring the record consists exclusively of only two volumes of appellate opinions and post-judgment pleadings, all of which post-date the trial that was held in this matter by several years.

To review whether there is substantial evidence in the record to support Speedway's assertion of clear error, we must review the evidence produced during the bench trial. The trial court painstakingly reviewed the testimony of the various witnesses and evidence at trial. Thus, we are called upon to likewise review the testimony and evidence produced at trial to evaluate whether clear error occurred. But, as discussed, there is no designation of any video recording or other evidence in the record for us to review.

Speedway was responsible for designating the video record and other evidence for certification by the circuit clerk as part of the record on appeal. *Gambrel v. Gambrel*, 501 S.W.3d 900, 902 (Ky. App. 2016). Speedway's failure to designate for our review the video record of the bench trial and the evidence introduced at that trial necessarily curtails our ability to evaluate the correctness of the trial court's findings.

Not only are we impeded from reviewing the record, another rule comes into play here – a rule that is not mitigated by any second-hand appraisal of

evidence[10] nor by Speedway's improper endeavor in this appeal to simply append evidence into the appendix of its brief.[11] The burden is on the appellant to designate that part of the record necessary for an adequate review of the case. *Id.* When an appellant fails to ensure that the record on appeal is complete and sufficient for a review of the issues presented, the appellate court must "assume the missing portions of the record support the trial court's decision." *Smith*, 450 S.W.3d. at 732. Therefore, because Speedway has failed to ensure that we can review the evidence of record ourselves, the law is clear that we must presume the trial court's findings are supported by the evidence of record.

In any case, given that the circuit court had the opportunity from the long-ago genesis of this case to evaluate the evidence, consider the credibility of the witnesses and apply the law, we discern no error in its having done so. Indeed, "judging the credibility of witnesses and weighing evidence are tasks within the exclusive province *of the trial court*." *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky.

---

[10] *See Caden v. Commonwealth*, 242 S.W.2d 409, 412 (Ky. 1951) (stating the only time this presumption does not arise is "where the omitted portions of a record were not considered by the trial court or did not influence the decision, and are not necessary to be regarded by us on review." (citation omitted)).

[11] Specifically, Speedway has appended several pages of what purports to be a pretrial deposition from Teresa Grubb in tab "B" of its brief, the substance of which was never discussed by the circuit court in its findings. Speedway's inclusion of these pages was clearly improper, and those pages cannot be considered, because they are not in the appellate record before us and the function of an appendix is to provide "ready reference" to documents that "may be found in the record." CR 76.12(4)(d)(v).

2003).  As the Supreme Court held in this matter, "[u]nder the comparative-fault regime, the fact finder is tasked with apportioning fault for the plaintiff's injuries between (or among) those responsible, with the defendant's liability for the plaintiff's damages proportionate to his or her share of the fault." *Grubb*, 523 S.W.3d at 415.  KRS 411.182(2) requires a trier of fact determining the respective percentages of comparative fault to "consider both the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed."

Upon review, we disagree with any suggestion from Speedway that the circuit court's extensive findings set forth above inadequately addressed those mandatory factual considerations.  We fail to see how the circuit court erred in any matter and will not further impugn its ability to judge the credibility and evidence under its seasoned review.  There is no patent indication from those findings that the circuit court drew any inferences in support of its findings that were manifestly against the weight of the evidence, or that the circuit court otherwise misunderstood the applicable law.  CR 52.01.

This case is now a teenager, having been filed in circuit court in 2008.  The circuit court has now reviewed the testimony and evidence on at least three separate occasions.  This is its fifth appellate trip.[12]  For an issue that was never

---

[12] 2011-CA-000223; 2012-SC-000573; 2014-SC-000641; 2017-CA-002021; 2020-CA-001192.

presented to the circuit court in the first instance, it has miraculously survived Kentucky Supreme Court scrutiny. The circuit court is the only tribunal reviewing this case which has had the first-hand opportunity to evaluate witnesses and evidence. After three evaluations of the evidence, it clearly believes that *under the facts of this case*, it is not insignificant to apportion twenty percent of the fault to the tort victim herein. There being no authority mandating otherwise and Speedway's having failed to ensure that the evidence of record was before this Court for purposes of appellate review, we are compelled to presume that the missing evidence of record supports the circuit court's findings.[13] Accordingly, the final judgment of the Clay Circuit Court is hereby AFFIRMED.

COMBS, JUDGE, CONCURS.

THOMPSON, K., JUDGE, DISSENTS AND DOES NOT FILE SEPARATE OPINION.

BRIEFS FOR APPELLANT:

David A. Owen
Logan J. Mayfield
Lexington, Kentucky

BRIEF FOR APPELLEES:

Yancy L. White
Annette Morgan-White
Manchester, Kentucky

---

[13] *Smith*, 450 S.W.3d. at 732.